[No. 9,057. Department One.—April 29, 1884.]

## LEONORA J. EVERSDON, Appellant v. CHARLES R. MAYHEW, Respondent.

CITY—TRUST—CONVEYANCE BY TRUSTEE.—In 1865, the mother of the plaint-iff, then a widow, had possession under color of title of certain lots in the town of Red Bluff, upon which she resided with the plaintiff. In 1866, she inter-married with one Wasson, and thereafter resided upon the premises with her husband and the plaintiff until her death in 1867. She died intestate, leaving her husband and the plaintiff successors to her estate. The town site had been entered at the office of the register of the land office of the United States, by the county judge, in trust for the use and benefit of the occupants of lots, under the acts of Congress providing for the reservation of town sites. In Septem-ber, 1866, the county judge received a patent from the United States. In March, 1868, the legislature passed an act authorizing him, as trustee, to distribute the lots, and issue certificates of title to the occupants. In July, 1868, Wasson, claiming as heir at law of his wife, obtained from the trustee a certificate of title in his own name, and afterwards sold the premises to parties from whom the defendant claims title by mesne conveyances. The plaintiff was a minor at the time the certificate was issued to Wasson. *Held,* that the mother of plaintiff had an equitable title to the lots before her marriage with Wasson, and that it was her separate property; that upon her death her interest vested in her hus-band and the plaintiff as tenants in common, each being entitled to an undi-vided half; that the legal title acquired by Wasson inured to the benefit of the plaintiff, and to the extent of her undivided interest was held by him in trust for her; and that a purchaser from him with notice of the equities of the plaintiff acquired no other or greater estate than he had, and took the land sub-ject to the trust.

NOTICE OF EQUITABLE TITLE—BONA FIDE PURCHASER.— To entitle a party to protection as a *bona fide* purchaser he must aver and prove the possession of his grantor, the purchase of the premises, and the payment of the purchase money in good faith and without notice.

APPEAL from a judgment of the Superior Court of the county of Tehama, and from an order refusing a new trial.

The facts are stated in the opinion.

*Chipman & Garter*, for Appellant.

*J. Chadbourne*, and *John F. Ellison*, for Respondent.

McKEE, J.—On the 1st day of May, 1865, Ann Wasson, then a widow with a child by a former husband, entered upon and took possession, under color of title, of "lots numbers 1, 2, 3, 4, and 5, in block number 47, as laid out and designated on the official plot of the town-site of Red Bluff, now on file in the office of the county recorder of the county of Tehama." Upon these premises she had a small dwelling-house in which she and the child, who is the plaintiff in the action in hand, resided until the year 1866, when the widow intermarried with Henry Wasson. After her marriage, she, with her husband and the plaintiff, continued to live there and occupy said premises as her property, until September, 1867, when she died intestate, seized of said premises, and leaving surviving her as her only heirs at law, her said husband and child.

The lots upon which she thus entered and resided, and on which she died, were portions of two tracts of land which constituted the town-site of the town of Red Bluff. These tracts had been entered at the office of the register of the land office of the United States in California, by the county judge of Tehama County, in trust for the several use and benefit of the occupants thereof, according to their respective interests, under acts of Congress which provided for the reservation of town-sites upon public lands of the United States. (United States Land Laws, pp. 107, 108, 109.) After the entry had been made, the trustee purchased the lands under the provisions of an act of Congress applicable to his trust; and on September 20, 1866, the government of the United States issued the patent to Warner Earll, the county judge of said county, and to his successors and assigns, for said lands, as the town-site of said town, in trust for the several use and benefit of the occupants of said lands according to their respective interests.

Congress provided that the execution of this trust, as to the disposal of the lots in said town, and the proceeds of the sales thereof, were to be conducted under such regulations as should be prescribed by the legislative authority of the State (§ 294, p. 109, *supra*); and on the 6th of March, 1868, the legislature

passed an act which authorized the trustee to distribute the town lots held by him in trust for the citizens of the town of Red Bluff, and to issue certificates of title to the inhabitants of the town in accordance with their respective interests, in the manner prescribed by the act. (Stats. 1867–68, p. 107.)

The acts of Congress, under which the foregoing proceedings were had, vested the widow, as the original and *bona fide* occupant of the town lots in dispute, with an equitable title to the same; and as she acquired the property before her marriage with Wasson, it was, by the laws of the State, her separate property. The protection of her title to this property was one of the objects of the congressional legislation upon the subject of town sites upon the public domain. (*Alemany* v. *Petaluma*, and *Jones* v. *Petaluma*, 38 Cal. 553, 397.) Had she lived, she would have had the right to perfect her equitable title to the property by obtaining from the trustee when he came to execute his trust, under the regulations prescribed by the State, a certificate of legal title. She died, however, before the State directed how the trust should be executed; and her estate in the property descended to her heirs. (*Grover* v. *Hawley*, 5 Cal. 486.) As one of these heirs, the plaintiff succeeded to an undivided one-half interests in the lots with the surviving husband as the owner of the other half. Wasson and the plaintiff thus became co-heirs and tenants in common of the property.

During the existence of that legal relation, Wasson, the adult tenant in common, on July 6, 1868, obtained from the trustee the certificate of title to the lots in his own name; and, soon after obtaining it, conveyed them to one Bryant, who, in turn, conveyed them by deed to the defendant. But the acquisition by Wasson of the legal title inured to the benefit of himself and his infant co-tenant, whose rights he was bound to protect.

It is urged that the plaintiff did not enter after the death of her mother, and that she was not a beneficiary under the acts of Congress, when the legal title was obtained. But at the death of her mother she was an infant about ten years of age, and her co-heir entered after the death. His entry, therefore,

inured to her benefit; and he took and held the legal title to her undivided half interest in trust for her.

"When," says Chancellor Kent, in *Van Horne* v. *Fonda,* 5 Johns. Ch. 388, " two devisees are in possession under an imperfect title, derived from the common ancestor, there would seem, naturally and equitably, to arise an obligation between them, resulting from their joint claim and community of interests that one of them should not affect the claim to the prejudice of the other. It is not consistent with good faith, nor with the duty which the connection of the parties, as claimants of a common subject, created, that one of them should be able without the consent of the other to buy in an outstanding title, and appropriate the whole subject to himself, and thus undermine and oust his companion."

Wasson, therefore, by the acquisition of the legal title, became the absolute owner of his own interest in the property, and the trustee of the legal title to the interest of the plaintiff therein. Being her trustee, he held the title for her benefit; and it was a violation of his trust for him to transfer her title to another. But the transfer was ineffectual to pass any other or greater estate than the trustee had; the person to whom he transferred it, and any one claiming under him, with notice of the trust, stood in the shoes of the trustee as their grantor. That was the position of the defendant, and the legal title to the plaintiff's interest in the lots, which he derived from the trustee, was in the hands of the defendant, subject to the control of the superior equitable right of the plaintiff, unless he was entitled to the protection of a court of equity against the equitable rights, as a *bona fide* purchaser without notice.

That constitutes the staple of the principal defense, which the defendant makes to the action. In his answer he alleges "that he purchased said premises in good faith and without any notice or knowledge of any right, title, or interest of the plaintiff in or to the same."

Upon this pleading the court found, as fact, that the defendant purchased the lots in controversy in good faith, and paid the sum of two hundred dollars therefor, and immediately after the purchase entered upon and took possession of the same; and, as law, that he was a *bona fide* purchaser of the lots for a valuable

consideration, without notice or knowledge of the plaintiff's claim or interest in the same, at the time of making his purchase.

This finding is not sustained by the evidence. Without conflict, the evidence in the record shows, that the defendant when he purchased had knowledge from the records of the title, that the lots had been claimed by the wife of Wasson, under a deed to her, before her marriage with him, from one George Stafford, which was recorded on page 440 in record book E, in the recorder's office of Tehama County; that she had occupied the lots under that deed and died seized of the same; and that her husband after her death, in his application for the legal title, claimed it only as an heir at law of his deceased wife. He admits that he examined the record of the title before buying from the husband, and that about or after the time of his purchase he tried to obtain a deed from plaintiff, but could not, because of her infancy. A purchaser with such knowledge, or which is equivalent to the same thing, such means of knowledge, is not a purchaser without notice.

Besides, the answer does not contain the allegations of, nor does the finding establish such a purchase, in good faith, for a valuable consideration, without notice, actual or constructive, as entitled the defendant to be protected against the prior equity of the plaintiff.

The answer of a *bona fide* purchaser without notice is, says the Supreme Court of the United States, in the nature of a new case founded on a right and title to real property operating, if made out, to bar and avoid the plaintiff's equity, which must otherwise prevail. (*Boone* v. *Chiles,* 10 Peters, 210.) To entitle a party to protection as such a purchaser he must aver and prove the possession of his grantor, the purchase of the premises, the payment of the purchase money in good faith, and without notice, actual or constructive, *prior to and down to the time of its payment,* for if he had notice, actual or constructive, at any moment of time before the payment of the money, he is not a *bona fide* purchaser. (*Boone* v. *Chiles,* 10 Peters, 210, 213; *Wallwyn* v. *Lee,* 9 Ves. Jr. 32; *Scott* v. *Umbarger,* 41 Cal. 419; *Tailor* v. *Ranney,* 4 Hill, 624; *Wells* v. *Morrow,* 38 Ala. 128; *Pearce* v. *Foreman,* 29 Ark. 568.)

Judgment and order reversed, and cause remanded for a new trial.

Ross, J., and McKinstry, J., concurred.

Hearing in Bank denied.