[No. 11100.   Department Two. — May 25, 1888.]
GRIFFETH & DALZEL, RESPONDENTS, v. H. BROWN,
APPELLANT.

ESTOPPEL IN PAIS — NECESSARY ELEMENTS OF — INSTRUCTIONS. — An instruc-
tion purporting to state the law upon the subject of estoppel *in pais* is
erroneous, if it omits the element that the party against whom the es-
toppel is invoked made the declaration or did the act upon which the
estoppel is sought to be based, either with the express intention to de-
ceive, or with such careless and culpable negligence as to amount to
constructive fraud.   And the error is not remedied by the fact that in
another and distinct instruction the rule was stated with more accu-
racy.

APPEAL from a judgment of the Superior Court of
San Benito County, and from an order refusing a new
trial.

The facts are stated in the opinion of the court.

*McCroskey & Hudner,* for Appellant.

The instruction upon the subject of estoppel *in pais*
was erroneous.   (*Biddle Boggs* v. *Merced Mining Co.,* 14
Cal. 279; *Lux* v. *Haggin,* 69 Cal. 255.)

*Montgomery & Scott,* and *N. C. Briggs,* for Respondents.

McFARLAND, J. — This is an action to recover five
hundred sacks of wheat, or the value thereof.   The ver-
dict and judgment were for plaintiffs, and defendant
appealed.

The action arose out of those prolific sources of liti-
gation, — leases of agricultural land, cropping contracts,
and mortgages of growing crops.

About the 1st of November, 1883, the defendant
Brown, being the owner of a certain tract of land, made
a verbal contract (the terms of which are in dispute)
about said land with one Manuel Smith.   Under this
contract (whatever it was) Smith cultivated the land
and put in a crop of wheat.   On February 19, 1884,

Smith mortgaged his growing crop to plaintiffs to se-
cure future advances.   Under the terms of the mortgage
plaintiffs were authorized to take possession of the grain
and harvest, thrash and sack it, which they did.   They
gave defendant one fourth of the grain, and piled the
other three fourths in one corner of the premises, from
which defendant took the five hundred sacks sued for,
claiming it to be his property.

Plaintiffs' theory (supported by some evidence) was,
that the verbal contract between Brown and Smith,
made in November, 1883, was simply a lease,—Smith
to pay as rent one fourth of the crop, and the stubble
and straw to go also to Brown.   But Brown introduced a
written instrument signed by himself and Smith, dated
November 3, 1883, but shown to have been executed
after plaintiff's mortgage, which was a cropping con-
tract, by the terms of which Brown was to be and re-
main the owner of all the wheat raised, not only until
Smith should have delivered him one fourth of the
wheat raised, but until he should have delivered to him
also an additional amount of the wheat sufficient to pay,
at market price, the sum of $576.22, and interest, which
Smith owed him for certain horses and farming imple-
ments.   And defendant's theory (supported also by
some evidence) was, that the written cropping contract
was the same as the original verbal contract made in
November, 1883, and was a mere reduction of the latter
to writing.   So that the jury may have found in favor
of either party as to the real character of the original
verbal contract.

But plaintiffs also introduced evidence tending to
show that when Smith came to them for advances they
went to defendant Brown and inquired of him what the
contract was between him and Smith, and told him that
Smith wanted them to make him advances; and that
Brown said, as Smith had before told them, that he
(Brown) was to receive one fourth of the wheat, and the

straw and stubble; and encouraged them to make the advances, and said nothing about any other lien on or interest in the wheat; and that by Brown's statements and representations they were induced to take the mortgage and make the advances. And for these reasons they claimed that Brown was *estopped* from setting up any claim under such cropping contract. The evidence as to what Brown said to plaintiffs about the contract was conflicting; and it is evident that the instructions of the court about the issue of *estoppel* thus raised were important and material.

The court instructed the jury, among other things, as follows: "If you find from the evidence that plaintiffs herein, Griffeth and Dalzel, before receiving the mortgage from Smith, or before making advances on said mortgage, applied to Brown, lessor to Smith, to ascertain Smith's liability to him, Brown, under the said lease or contract, and that defendant Brown by his declarations or conduct misled said Griffeth and Dalzel to their prejudice as to the material terms of said contract or lease, he, Brown, is *estopped* from setting up the alleged lien, and shielding himself behind the stipulation that the grain was subject to a lien for the payment of claims other than rental, and which were not communicated to plaintiffs."

The court also gave another and longer instruction (found on page 35 of the transcript), substantially to the same effect as the one just quoted, and with no other important qualification.

It is quite evident that these instructions were erroneous. They lack the most important element of estoppel; namely, that the party against whom it is invoked made the declaration or did the act upon which the estoppel is sought to be based, either with the express intention to deceive, or with such careless and culpable negligence as to amount to constructive fraud. (*Biddle Boggs* v. *Merced M. Co.*, 14 Cal. 368; *Davis* v. *Davis*, 26 Cal. 38; 85 Am.

Dec. 157.) And the error is not remedied by the fact that in another and distinct instruction the rule was stated with more accuracy. The jury were at liberty to follow either instruction.

We are aware that a judgment should not be reversed for every abstract error occurring in the preliminary steps which led to it. But the doctrine of estoppel *in pais* would be very harsh and unjust if allowed to go beyond its legitimate limits. Its practical meaning, generally, is, that a man must lose property actually and legally his on account of something which he has said about it. Brown was not under obligation to tell plaintiffs anything about his property or his business. Still, if with intent, either express or fairly to be implied, he did make false representations to plaintiffs for the purpose of deceiving them, or was guilty of fraudulent carelessness in his representations, and plaintiffs had not other reasonable means of knowing the truth, and relied on such representations, then he should suffer for his conduct. But these characteristics of the rule of estoppel should have been fairly and clearly given to the jury. And it is quite probable that this was the very point which determined the verdict. For this reason, therefore, we are of the opinion that the judgment should be reversed.

Judgment and order denying a new trial reversed, and cause remanded for a new trial.

SEARLS, C. J., and SHARPSTEIN, J., concurred.