[Civ. No. 426.   Second Appellate District.—December 18, 1907.]

## S. K. LINDLEY, Appellant, v. Mrs. F. H. BLUMBERG and DINA E. SIMPSON, Executrix of Will of WILLIAM SIMPSON, Deceased, and DINA E. SIMPSON, Respondents.

UNRECORDED DEED—PROTECTION OF SUBSEQUENT PURCHASER.—To entitle a subsequent purchaser to protection as a *bona fide* purchaser as against one holding under a prior unrecorded deed, he must aver and prove the possession of his grantor, the purchase of the premises from him, and the payment of the purchase money in good faith without notice, actual or constructive, of such prior deed, when the purchase money was paid.

ID.—SPECIFIC PERFORMANCE—OPTION TO PURCHASE IN LEASE—PRIOR UNRECORDED DEED TO WIFE FOR VALUE—NOTICE OF DEED BEFORE PAYMENT.—Where a husband prior to the lease of the premises to plaintiff for value, with an option to purchase, had executed an unrecorded deed for value to his wife, who had no knowledge of the lease, when executed, and who gave notice of her deed to the lessee one year and four months before the option was exercised, the lessee cannot enforce specific performance of the option as against her.

ID.—EXTENT OF LESSEE'S RIGHTS—REIMBURSEMENT OF EXPENDITURES MADE IN GOOD FAITH—INCREASE IN VALUE—COMPENSATION IN RENTS.—In such case the extent of the lessee's rights is to reimbursement of expenditures made in good faith, without notice of the unrecorded deed; but where it appears that, by a large increase in the value of the property, the lessee had been fully reimbursed for all expenditures made prior to notice of the unrecorded deed, from rents received from the property, he has no claim for further reimbursement, from the prior grantee.

ID.—WIFE NOT EQUITABLY ESTOPPED.—The wife, though knowing the existence of the lease, is not equitably estopped by knowledge of improvements made by the lessee, where she had no knowledge of the existence of the option, or that such expenditures were made on the faith of the option; and where the appreciation in value of the property leased was after notice of the wife's title, and that she intended to maintain her rights as against the option, though not disputing the lease, she cannot be held estopped by any acquiescence to plaintiff's injury.

ID.—SUPPORT OF FINDINGS FOR WIFE—WEAKNESSES, INCONSISTENCIES AND CONFLICTS.—Although weaknesses, inconsistencies and conflicts

in the evidence claimed by appellant are apparent, yet where there is some evidence, which the trial court had accepted and acted upon, in support of its findings for the wife against plaintiff's claim of specific performance against her, and the conclusion of law from the findings is correct, the findings and judgment cannot be disturbed upon appeal.

APPEAL from a judgment of the Superior Court of Los Angeles County, and from an order denying a new trial. Curtis D. Wilbur, Judge.

The facts are stated in the opinion of the court.

J. S. Chapman, and Ward Chapman, for Appellant.

C. L. Shinn, and McNutt & Hannon, for Dina E. Simpson, Respondent.

TAGGART, J.—This is an action to compel specific performance of an option to purchase real estate. The option is contained in a lease of the premises which are the subject of the option.

Judgment was for defendant Dina E. Simpson, and plaintiff appeals from the judgment and from an order denying his motion for a new trial.

On the seventeenth day of January, 1901, William Simpson made a lease to plaintiff of the premises in dispute for the term of five years from that date, at a monthly rental of $10, payable quarterly in advance. The lease contained an option in the words and figures following, to wit: "The party of the first part hereby gives to the party of the second part, his heirs and assigns, the exclusive right to purchase said property for eighty ($80) dollars per front foot cash during the life of this lease, and upon payment of said amount agrees to furnish a good deed and unlimited certificate of title from Title Insurance & Trust Co., or Title Guarantee and Trust Co. of Los Angeles, showing said property clear of all incumbrance." This instrument was regularly recorded in the records of leases of Los Angeles county on January 28, 1901.

On August 20, 1902, William Simpson died testate, and letters testamentary issued to the defendant Dina E. Simpson, his widow, as executrix, on the twenty-fourth day of Sep-

tember, 1902, and she thereupon qualified as such executrix. On September 23, 1902, the Union Bank of Savings, which had been the designated agent to receive the rent for said property, refused to receive the rent for the quarter begin: ning October, 1902, claiming to act upon notice given by Dina E. Simpson, both individually and as executrix. On October 2, 1902, Mrs. Simpson notified plaintiff that she was the owner in fee of the leased premises by virtue of a convey- ance thereof to her by William Simpson by deed dated October 20, 1896. This deed was not recorded in the office of the recorder of Los Angeles county until August 22, 1902.

By a decree of distribution entered in the estate of William Simpson, deceased, on the fifteenth day of February, 1904, the whole of said estate was distributed to the defendant Dina E. Simpson, but the lot here in question was not described in said decree. On the twenty-third day of February, 1904, plaintiff claiming to exercise his right of purchase under said option offered to pay to defendant the purchase price for the lot in gold coin, as provided in the option given by William Simpson; but she refused to accept the same or to convey the property to plaintiff. Plaintiff paid all rent due to the time the above notice was given, and has regularly tendered that falling due since then, at the times specified in the lease, but defendant Simpson refused to receive such rent either as executrix or individually.

A number of defenses based upon allegations of weakness of mind of William Simpson, and acts of fraud and undue influence perpetrated in procuring the execution of the op- tion, were presented by defendants' answer to the complaint, but these were eliminated from consideration here by the rul- ings of the court upon the demurrer to the answer, and its findings of good faith upon the part of plaintiff in all trans- actions connected with the execution of the lease and option.

The court found that a valuable and adequate considera- tion was given for the lease and the option contained therein; that the property leased had no rental value in the market and the premises were of the value of only $50 per front foot at the time of the execution of the writing containing the lease and option; that plaintiff erected a barn on said prem- ises at a cost of $300 after said instrument was executed; that he would not have rented said premises or constructed said barn but for the option in said lease; that this fact was known

to the lessor at the time the lease was made; that said contract was fair and just to the lessor; that plaintiff paid the rent to William Simpson up to the time of his death, and that the defendant Dina E. Simpson knew, or could have learned, that said payments were being made in pursuance of said lease; that she had knowledge of the making of the lease on the day it was executed, but did not know any of its terms until after its execution, and did not know that it contained the option until ten days later.    That plaintiff had no notice or information at the time of the execution of the lease that Dina E. Simpson had any right, title or interest in the property.

The findings upon which the judgment in favor of the defendant rests may be summarized as follows: She was not personally present at the time the lease was executed and did not know its contents until ten days thereafter; it is not true that the lease or option was given with her full knowledge or consent or acquiescence, and it is not true that at the time of the execution of said instrument, nor at any other time until the 2d of October, 1902, she did not assert or claim any right, title or interest in said property, or make any objection to said lease or option, but she did not make any such objections to plaintiff until that date; the deed from William Simpson to her was for a valuable consideration and conveyed the title to the leased premises, and she was the owner of said property from the date of that deed; the market value of the premises has greatly increased since January 17, 1901, and the premises, at the time of the trial, were worth about $29,000; plaintiff has received in rents from said premises more than sufficient to compensate him for the rents paid by him and the cost of the improvements placed on the property by him, and has been fully reimbursed and recouped for all expenditures made by him under said lease and option.

The conclusions of the trial court from the facts found are, that plaintiff is not a purchaser or encumbrancer in good faith so as to entitle him to a specific performance of his contract against the defendant Dina E. Simpson, and that she is not estopped from asserting her title against the option of plaintiff.    Appellant contends that the judgment is not supported by the findings, but if the court so construes the findings as to sustain the judgment, it should nevertheless re-

verse the judgment and order a new trial because the evidence is insufficient to support the findings.

The finding that the defendant Dina E. Simpson acquired the premises from her husband in 1896 for a valuable consideration is attacked by appellant upon his motion for a new trial as not being supported by the evidence in two respects: First, that the deed was not delivered; and second, that a valuable consideration was not shown. In regard to the first matter, the testimony of the witness Samson, who drew the deed, is: "I drew it up and I made it (the deed) and he signed it and delivered it to his wife and she delivered it to me and wanted I should take care of it." It is contended that on cross-examination the testimony of the witness was inconsistent with his statement on direct examination. Assuming this to be true, the trial court might elect which, if either, statement it would believe, and the finding indicates which it accepted as true; but we do not think the two statements are necessarily inconsistent.

The evidence shows that the lot was purchased in the name of Wm. Simpson in 1895 for $3,750—$1,750 in cash and the balance secured by mortgage on the property. Eight hundred dollars of the defendant's money "went into the property." There is no showing whether this was a loan to William Simpson or a contribution to the cash paid for the property. If the former, the property became community property and William Simpson owed defendant $800; if the latter was the case, a resulting trust arose in favor of the defendant to the extent of sixteen thirty-fifths and in favor of the community for the other nineteen thirty-fifths of the property. If William Simpson made the deed of October 20, 1896, to defendant in payment of an existing debt of $800 due to her from him, the consideration was a valuable one, and if he conveyed to her as trustee of a resulting trust, she took sixteen thirty-fifths in execution of the trust, and the rest, or community portion of the property, passed to her for the consideration mentioned in the deed, one dollar and love and affection. If it were necessary to sustain the finding that the conveyance was for a valuable consideration, there is evidence sufficient to do so. (*Hussey* v. *Castle,* 41 Cal. 241.) A valuable consideration is such as money or the like and the adequacy or inadequacy of the amount, or its disproportion to the actual value of the property, does not

affect the question of the kind of consideration. The adequacy of the consideration is an element of the good faith of the transaction, and has no bearing upon whether the consideration is a valuable or a good one. (*Frey* v. *Clifford,* 44 Cal. 342; *Clark* v. *Troy,* 20 Cal. 224.)

Mrs. Simpson then was the owner of the property at the time the premises were leased to the plaintiff and when the latter purchased the option. Under the findings, these two contracts must be considered as one. The court found the property had no rental value at the time the lease was made. In the absence of any finding that it subsequently acquired a rental value, we may assume that the entire promise to pay $10 per month for five years was in consideration for the option. The erection of the $300 barn may also be attributed to plaintiff's desire to procure the option and as a part payment therefor. Taken in the most favorable light for the appellant, he paid $900 for the option, $300 in building a barn upon the premises, and the $600 which he obligated himself to pay at the rate of $10 per month, quarterly in advance, for five years.

This price paid and to be paid for the right to purchase within five years should not be confused with the purchase price of the property. The latter was to be $80 per front foot, whether the right was exercised the day following the execution of the option or the last day of the five years; so that the $900 was no part of the purchase price of the property. The option was purely executory in its character, and on October 2, 1902, when defendant notified appellant of her title to the property, no part of the purchase price of the lot had been paid, and plaintiff had not become a purchaser of the property. All his transactions were conducted in good faith and for all that he had received he had given an adequate and valuable consideration, and the agreed price for the property was adequate at the time the option was given, and this was sufficient against the maker of the option; but he had not purchased the property. He did not exercise his right to do so, under the option, until February, 1904, one year and four months after he had notice of defendant's unrecorded deed.

To entitle a party to protection as a subsequent purchaser in good faith and for value against the title of a grantee

7 Cal. App.—10

under a prior unrecorded deed, he must aver and prove the possession of his grantor, the purchase of the premises, the payment of the purchase money in good faith, and without notice, actual or constructive, *prior to and down to the time of its payment;* for if he had notice, actual or constructive, at any moment of time before the payment of the money, he is not a *bona fide* purchaser. (*Eversdon* v. *Mayhew*, 65 Cal. 163, [3 Pac. 641]; *Wilhoit* v. *Lyons*, 98 Cal. 413, [33 Pac. 325]; *Beattie* v. *Crewdson*, 124 Cal. 579, [57 Pac. 463]; *Kenniff* v. *Caulfield*, 140 Cal. 45, [73 Pac. 803].)

If it were conceded that the entire $900 were paid, and agreed to be paid, as part of the purchase price for the property (only the rent from January, 1901, to October, 1902, actually was paid), defendant would only be required to refund to plaintiff the amount paid by him before receiving notice of her right in order to enforce her claim to the property. Plaintiff is entitled to be protected only to the extent that he is hurt. (*Davis* v. *Ward*, 109 Cal. 191, [50 Am. St. Rep. 29, 41 Pac. 1010]; *Combination Land Co.* v. *Morgan*, 95 Cal. 552, [30 Pac. 1102].) The finding of the court that he has been fully reimbursed and recouped for expenditures made by him under the lease and option recognizes his right to protection *pro tanto.*

The conclusion of the trial court that plaintiff was not a subsequent purchaser in good faith and for a valuable consideration, as those terms are used in section 1214 of the Civil Code, is sustained by the record.

We are likewise unable to agree with appellant's contention that the conclusion of the trial court, that respondent is not estopped from asserting her title against plaintiff's option, is unsupported by the findings. In order that she should be estopped it is necessary that some act or failure to act upon her part should have resulted in injury to plaintiff, or in her acquiring some advantage over him by unfair means. In other words, to quote from appellant's brief: "To raise an equitable estoppel the party estopped must by his declaration or conduct (or silence) mislead another to his prejudice so that it would be a fraud upon him to allow the true state of facts to be proved" (*Martin* v. *Zellerbach*, 38 Cal. 300, [99 Am. Dec. 365]), "and the representations or conduct must either have been done with intent to deceive or with such carelessness or culpable negligence as to amount to a constructive

fraud." (*Griffeth* v. *Brown,* 76 Cal. 260, [18 Pac. 372].)
"The vital principle is that he who, by his language or con-
duct, leads another to do what he would not otherwise have
done, shall not subject such person to loss or injury by dis-
appointing the expectations upon which he acted." (*Dicker-
son* v. *Colgrove,* 100 U. S. 580.)

The question whether respondent is estopped by her acts or
silence to set up her prior title against appellant's depends
upon her knowledge of her husband's acts in relation to the
leased property. At the time the lease was made respondent
knew that her husband was going to lease the property. The
same day, when her husband came home, she learned that the
lease had been executed and that he had leased it for a term
of five years. She had no other knowledge of the contents of
the lease or the option until ten days thereafter. There is no
evidence and no finding as to when the barn was erected upon
the premises. It might have been, and probably was, built
within ten days after the execution of the lease and before
respondent had knowledge of the option. Had she known of
its construction, she would have been justified in assuming
that it was built in order that plaintiff might use the premises
to advantage under the lease. In the absence of evidence and
finding, the presumption must be in support of the judgment.
As respondent had no knowledge that the barn was con-
structed by reason of the option, no estoppel can be imputed
to her on this account.

Plaintiff's status was not changed from that time until
October 2, 1902, except by the payment of the $10 per month
rent. The court finds the value of the property was $50 per
front foot at the time of the making of the lease, and the
value of the lot at the time of the trial (October, 1905) to be
in gross $29,000. There is neither evidence nor finding to
show value at any intervening time. There is nothing by
which it can be determined how long the market value of the
property continued at $50 per front foot. If, as appellant
contends, he was prejudiced by being prevented from buying
other property in the neighborhood at $50 or $80 per front
foot, and holding it until its value increased to $376 per front
foot, this was not because of any act of respondent. In the
absence of evidence or finding as to intermediate values it will
be presumed in support of the trial court's finding that re-
spondent was not estopped; that $50 per foot continued to be

the value of the property until after appellant had notice of respondent's title and claim. Having had this notice before the rise in values, appellant cannot successfully contend that any loss or injury of this kind was due to the act of respondent. He was under no obligation to carry out the option or pay any part of the $80 per front foot purchase price, and could have released himself from the option by simply withdrawing at any time.

All the obligations entered into by appellant so far as the option was concerned were without knowledge of the respondent at the time the obligations were assumed. The appreciation in value of the property was after appellant had notice of respondent's title and information that she intended to maintain her rights against the option. It cannot, therefore, be said that appellant suffered any loss or injury on account of disappointing expectations for which respondent was responsible.

Finding X is attacked by appellant as unsupported by the evidence. This finding merely negatives certain allegations of the complaint, and when considered with finding XIV distinguishes between the knowledge upon the part of the respondent that the lease had been made and knowledge of its contents. The testimony of the respondent is that she and her husband had talked about leasing the property for three years; that the agent who drew the lease called and asked her if she was willing to the leasing of Main street and she answered "certainly." When her husband came home that evening he told her he had leased for five years. She negatives all other knowledge of the contents until several days after, when her husband told her that he had given the option. There is a direct conflict between her evidence and that of the agent in this respect, but the evidence supports the inference that neither the lease nor the option were given with full knowledge, consent or acquiescence on her part. There is an absence of evidence in respect to the other part of finding X which is assailed, to wit: That "it is not true that at the time of the execution of said instrument, nor at any other time until the 2d day of October, 1902, said defendant did not assert or claim any right, title or interest in said property, nor make any objection to said lease or option." This was a negative allegation of the complaint which was denied by the answer. In the absence of evidence to support an allegation

necessary to be proven, the finding upon the issue raised thereby should be against the person alleging and failing to prove it. This rule was followed by the trial court, but we do not think the finding material, as it is immediately followed by the further finding that she made no claim or objection to the plaintiff until October 2, 1902. If no knowledge of her claim was brought home to the plaintiff, he would not be affected by such assertion to others. The point that the evidence is insufficient to support the finding of a delivery of the deed of October 20, 1896, has heretofore been considered, as has, also, the evidence in relation to the purchase of the property in 1895 by William Simpson and respondent's contribution to the purchase price in that transaction.

The weaknesses and inconsistencies and conflicts in the evidence which supports the findings, to which our attention has been called by appellant, are apparent, but it is not necessary that the trial court accept and act upon the testimony that appeals most strongly to us in order to sustain its findings against an attack for insufficiency of the evidence. There is evidence, and the trial court has accepted and acted upon it.

The good faith of all the parties is declared by the decision of the trial court, and the question, Is a party holding possession of real property under a lease and option to purchase, which has been recorded, entitled to compel a specific performance of the option by a grantee claiming under a prior unrecorded deed from the same person? was answered by denying specific performance. There is evidence in support of the inference of fact, and the conclusion of law is correct.

The judgment and order appealed from are affirmed.

Allen, P. J., and Shaw, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on January 17, 1908, and a petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 13, 1908.