BAILEY, Appellant, v. COLOMBE, et al, Respondents.

## (187 N. W. 203.)

(File No. 4908.   Opinion filed May 16, 1922.)

1. **Principal and Agent—Land Purchase, Deed Taken in Agent's Name—Trust Violated—Rule Under Statutes.**

   Where one accepts the conditions of an agreement to procure for another the purchase by latter of realty, he enters into a fiduciary relation with the principal in all matters pertaining to the agency; and if thereafter he procures a deed to be taken to himself, this is a violation of the trust and he holds the land as an involuntary trustee, unless he purchased in good faith and for valuable consideration (Secs. 1194, 1195, 1207, Code 1919); following Brookings Trust Co. v. Bertness, 17 S. D. 293.

2. **Same—Non-payment by Principal of Purchase Price and Agent's Commission, Effect Re Agent's Trusteeship—Rule Stated.**

   The fact that the principal, for whom an agent had agreed to procure the purchase of realty, had not yet paid the purchase price nor the agent's commission, is not controlling in determining the principal's rights as against the agent who had in violation of the trust procured a deed to himself and wife; the controlling question being whether in equity and good conscience the agent who purchased with his own money in his own name in violation of the agreement, can be allowed to retain the fruits of his perfidy.

3. **Same—Good Faith of Confidential Agent Required, as Policy of Law.**

   It is the universal policy of the law to hold a confidential agent to the highest degree of good faith.

4. **Same—Agent for Land Purchase, Purchasing for Himself, Profits as Belonging to Principal, Agent as Trustee—Statute of Frauds Non-applicable.**

   Where an agent employed to purchase for his principal, purchases for himself, all profits and advantage gained in the transaction belong to the principal, and agent is a holder as principals' trustee; and such trust is within the exception provided for in statute of frauds, since it arises out of construction and operation of law, and may be established by parol.

5. **Trustee—Agent's Realty Purchase for Another—Trust Non-renounceable, Equity Courts as Sole Power of Discharge, or by Power in Instrument, or Parties' Consent.**

A trustee having accepted a trust cannot renounce it. One undertaking an office for another is bound to discharge its duties, and cannot free himself·from liability by renunciation; he must be discharged by court of equity, or by special power in the trust instrument, or by consent of all parties in interest.

6. **Vendor and Purchaser—Agent for Realty Purchase for Another, Deed Taken to Agent's Wife, Inadequate Consideration—Principal in Possession as Lessee—Whether Wife an Innocent Purchaser—Burden of Proof Re Consideration.**

Where one who had agreed to procure the sale of realty to another as his principal, thereafter in violation of the agreement procured a deed to his wife, the consideration being $100, whereas the agent had himself paid $5000 for the land, the wife, as between herself and the principal and beneficiary of the agreement, is not an innocent purchaser; and burden of proof is upon wife to show that she purchased for value. So held, where the principal was in possession of the land under a lease procured pending the purchase.

7. **Mortgages—Realty Mortgage, Land in Possession of Lessee and Prospective Purchaser, Effect Re Mortgage Lien.**

Where at time of the taking of a realty mortgage, the land was in possession of one in whose favor an oral contract existed with another who had agreed to procure the sale and conveyance of the land to his principal, the latter meanwhile having been placed in possession under a lease from former owner; held, the mortgage was not a first lien as against said principal, since the fact that the latter was in possession to knowledge of mortgagee was sufficient to put him upon inquiry, which if pursued, would have revealed the true situation.

Appeal from Circuit Court, Charles Mix County. Hon. ROBERT B. TRIPP, Judge.

Action by R. D. Bailey, against Christopher Colombe, Emma Colombe, and Charles J. Montgomery, to have defendants Colombe declared trustee of certain lands for plaintiff's benefit. From a judgment for the defendants, and from an order denying a new trial, plaintiff appeals. Reversed, and new trial granted.

*Caster & Cassidy,* and *L. E. Corey,* for Appellants.

*W. J. Hooper,* and *Bauer & Whitney,* for Respondents.

(1) To point one of the opinion, Appellant cited: Fideler v. Norton, 4 Dak. 258, 30 N. W. 128; Sec. 1207, 1195 to 1200, Code 1919.

(6) To point six, Appellant cited, re burden of proof: Parish v. Mahaney, 12 S. D. 278; Connecticut Life Ins. Co. v. Smith, 117 Mo. 261, 38 Am. St. Rep. 656.

Respondent cited: 26 R. C. L., Sec. 92, page 1247.

ANDERSON, J. This action is brought to have the defendants Colombe declared trustees of certain lands in Charles Mix county for the benefit of plaintiff. The facts so far as material are: Christopher Colombe, husband of Emma Colombe, about March, 1919, entered into an oral agreement with plaintiff by which defendant C. Colombe agreed, for the payment to him of a reasonable commission, to act as plaintiff's agent in the purchase of lands involved as soon as a patent in fee was received at the Indian agency at Greenwood. This land had been allotted to one Daniel Charging Whirlwind, a Yankton Sioux Indian. At that time plaintiff told Colombe that a patent in fee had been applied for by the Indian allottee, Whirlwind; that at said time Colombe, who is also an Indian, stated that he knew Whirlwind, and would use his efforts in procuring the land for plaintiff when the patent was received. At that time it was agreed and understood between Colombe and plaintiff that plaintiff should notify Colombe by telephone when the patent arrived at Greenwood, and that Colombe would immediately bring Whirlwind over to Lake Andes and close the purchase for plaintiff. Thereafter, and about April, 1919, Colombe brought Whirlwind to Lake Andes and telephoned plaintiff to come there to close up the deal; that he had Whirlwind there, and that he had taken a deed from Whirlwind running to plaintiff. When plaintiff arrived at Lake Andes he learned that the patent had not arrived, and the purchase of land could not then be completed. Thereafter, and on the suggestion of Colombe, plaintiff met him and Whirlwind at Tyndall, and on further suggestion of Colombe entered into a lease with Whirlwind for the land for a period of three years for a cash consideration of $300. Thereafter plaintiff entered into immediate possession of the lands. Before making the lease plaintiff received approval of the Indian agent. After this lease had been made Colombe told plaintiff to notify him by telephone of the arrival of the patent, and he would immediately bring Whirlwind and close up the purchase of the land for plaintiff. Thereafter, about May 21, 1919, plaintiff notified Colombe that patent was at Greenwood, and Colombe promised to meet plaintiff at Lake Andes on Friday following, and that he would have with him Whirlwind for the purpose of closing the land deal. Accordingly plaintiff met Colombe and

Whirlwind at Lake Andes May 24, 1919, prepared to close the deal for the purchase of the lands, and to pay Colombe for his services. Plaintiff immediately after meeting Colombe was by him requested to get into his car for a drive. Colombe drove a short distance out of town, and, stopping the car, asked plaintiff if patent was at Greenwood. Plaintiff told him that it was. Colombe then said that if patent is at Greenwood there is nothing to do but to place the deed on record. Colombe produced a deed of the land involved, signed by Whirlwind and his wife, but running to Emma Colombe, his wife. Plaintiff made objection to the deed running to Colombe's wife. Colombe then stated to plaintiff that he would procure a deed from his wife and himself running to plaintiff, and mail the same to plaintiff. Colombe then, over protests of plaintiff, filed the deed running to his wife in the register of deeds office. Colombe never mailed any deed to plaintiff, and has never procured any such deed, to be signed by himself and wife, running to plaintiff. Defendant Emma Colombe had no personal dealings with Whirlwind in relation to this land. All negotiations were carried on through Colombe. During all the time of these land negotiations Colombe and his wife were living together as husband and wife. It stands undisputed that the defendants Emma Colombe and Montgomery knew that plaintiff was in possession of the land at the time she took title and at the time Montgomery took the mortgage on the land.

[1] Appellant contends that between him and defendant Colombe there existed, at the time defendant Colombe procured from Whirlwind the deed for the land running to Colombe's wife, the confidential relation of principal and agent; that this relation was such that a conflict between defendant's interest and his duty to plaintiff imputed to defendant Colombe constructive fraud. Morris v. Reigel, 19 S. D. 26, 101 N. W. 1086. Appellant urges that when defendant accepted the conditions of this agency he entered into a fiduciary relation with plaintiff in all matter pertaining to the subject of his agency. R. C. §§ 1194, 1195; R. C. § 1207.

"Everyone to whom property is transferred in violation of trust holds the same as an involuntary trustee under such trust unless he purchased it in good faith and for a valuable consideration."

[2]   To us it seems that that the case comes squarely within the holdings of this court in the case of Brookings Trust Co. v. Bertness, 17 S. D. 293, 96 N. W. 97, and cases cited.   It is urged by appellants that the plaintiff paid neither the purchase price for the land nor the commission for procuring the same, and that hence defendants Colombe were under no obligation to plaintiff as agents, trustees, or otherwise.   This we do not believe to be the law.   Rose v. Hayden, 35 Kan. 106, 10 Pac. 554, 57 Am. Rep. 145.

The controlling question in this case is not whether the principal advanced the purchase money, but it is whether in equity and good conscience the agent who in fact purchased the property with his own money in his own name, in violation of his agreement with his principal and in abuse of the confidence reposed in him by his principal, can be allowed to retain the fruits of his perfidy.

[3, 4]   The soundness of this doctrine is attested by this court in Brookings Trust Co. v. Bertness, supra; Sanford v. Norris, 4 Abb. Dec. (N. Y.) 144; Wellford v. Chancellor, 5 Grat. (Va.) 39; Onson v. Cown, 22 Wis. 329; Snyder v. Wolford, 33 Minn. 175, 22 N. W. 255, 53 Am. Rep. 22.   It is the universal policy of the law to hold a confidential agent to the highest degree of good faith.   Boswell v. Cunningham, 32 Fla. 277, 13 South. 354, 21 L. R. A. 54.   The Florida court says:

"Where an agent employed to purchase for his principal purchases for himself, all the profits and advantage gained in the transaction belong to the principal, and the agent will be held to have taken the property as trustee for the principal.   Such a trust comes within the exception provided for in the statute of frauds * * * as it arises out of the construction and operation of law, and may be established by parol"

1 Perry on Trusts, § 401:

[5]   "A trustee having accepted a trust cannot renounce it. If any one undertakes an office for another he is bound to discharge his duties, and he cannot free himself from liabilities by mere renunciation   He must be discharged by a court of equity, or by a special power in the instrument of trust, or by consent of all parties interested in the estate if they are sui juris."

[6]   It is urged in behalf of Colombe's wife that she is an

innocent purchaser of the land, and that hence the plaintiff cannot prevail as against her. This we think not tenable, for the reason that it appears from her answer that she knew that plaintiff was in possession of the premises. Such knowledge would be sufficient to put her on inquiry, which, if pursued, would have revealed the truth. There is still another reason why she cannot claim to be an innocent purchaser for value, and that is that the evidence fails to show that she paid the full, fair value of the property; the record showing that if she paid anything she paid $100, and no more; this in face of the fact, as it is shown by the record that her husband paid $5,000 therefor. Upon this point she had the burden of proof 27 R. C. L. 464; Davis v. Ward, 109 Cal. 186, 41 Pac. 1010, 50 Am. St. Rep. 29; Eversdon v. Mayhew, 65 Cal. 167, 3 Pac. 641; Jewett v. Palmer, 7 Johns. Ch. (N. Y.) 65, 11 Am. Dec. 401.

[7] It is urged by defendant Montgomery that his mortgage should be declared a valid first lien against the premises. This we deem doubtful, for the reason that his answer admits that he knew plaintiff had possession of the land at the time he took his mortgage. Such knowledge on his part was sufficient to put him on inquiry which, if pursued would have revealed the true situation.

From the foregoing it is clear that the court erred in entering findings and judgment for defendants. The judgment and order appealed from are reversed, and a new trial granted.