POND et al. v. GOLDSTEIN et al.

No. 6033.

Circuit Court of Appeals, Ninth Circuit.
July 28, 1930.

James Wickersham, of Juneau, Alaska, for appellants.

Hellenthal & Hellenthal, of Juneau, Alaska, for appellees.

Before RUDKIN, DIETRICH, and WILBUR, Circuit Judges.

WILBUR, Circuit Judge.

Appellees brought this action to compel the specific performance of a contract made by E. P. Pond for the sale to them of a building in Juneau, Alaska, dated April 26, 1927, reciting the payment of $1,000 as part payment of the purchase price of $11,000, and providing that the balance should be paid on April 30, 1927. The contract provided that the property should be free and clear of all encumbrances; it recited the fact that the building was occupied by the Winter & Pond Company; it contained an agreement that the appellees, as purchasers, would rent to the seller certain portions of the building then occupied by the Winter & Pond Company for the sum of $25 per month for a period of five years. Two days later, April 28, 1927, the vendor, E. P. Pond, repudiated the agreement, returned the $1,000 purchase price, which the purchasers refused to accept, and on the 30th day of April, 1927, the vendee tendered to the seller the balance of the purchase price; that is to say, a total of $11,000. Harriet M. Pond, the wife of E. P. Pond, filed a complaint in intervention in which she alleged that she was the wife of E. P. Pond, that the property was acquired by the joint efforts of herself and her husband, and that her husband agreed with her that she would and did hold and own property thus acquired in common and as community property, share and share alike. She alleged that the property in question was the community property of the intervener and her husband, owned by them share and share alike, and this fact was well known to the purchasers. It was alleged that the intervener did not consent to the contract of sale executed by her husband and that she repudiates the transaction and refuses to join in a conveyance thereof, and she further alleges: That, at the time alleged in the complaint when the plaintiffs allege they made the contract with the defendant Pond to purchase the described property for the amount alleged in the complaint, this intervener was and for a long time prior thereto had been and now is the owner of and entitled to the possession of an undivided one-half interest in the said property; that the said property was then and is now of the value of more than $20,000, and the price fixed in the contract was grossly inadequate.

The Winter & Pond Company, a corporation, also intervened, and alleged that on July 1, 1916, it sold the property in question to E. P. Pond and rented the premises from him for $100 a month; that on February 7, 1927, the intervener entered into an agreement in writing with E. P. Pond by which Pond agreed to make certain improvements and to give the intervener a lease on the premises for a period of not less than five years; that thereafter, on May 27, 1927, and in pursuance of that agreement, the vendor, Pond, executed and delivered a written lease. By this lease it appears that the vendor, E. P. Pond, leased the whole of said premises to the intervener, Winter & Pond, for the period of five years from February 7, 1927, at $120 per month.

The trial court made findings of fact and entered the decree in favor of the appellees, decreeing "that the complaint in intervention of the intervener Harriet M. Pond be and the same is hereby dismissed," and that the complaint in intervention of Winter & Pond Company be dismissed, and that the agreement of sale by E. P. Pond be specifically performed by E. P. Pond, and that said appellant forthwith convey, free and clear from all incumbrances, the premises in question to the appellees, and, in the event of his refusal, the clerk was authorized and directed to make such conveyance, and that the plaintiff have and recover from defendant E. P. Pond the rental value from the 1st day of May, 1927, to the date of judgment, calculated at $150 per month for each and every month, and $500 for attorney's fees, and that the plaintiffs recover from the defendant E. P. Pond and the intervener Harriet M. Pond and the intervener Winter & Pond Company their costs and disbursements. It is ordered that

the clerk pay to plaintiffs (appellees) out of the $11,000 now on deposit with him the rental value of the property between May 1, 1927, and the date hereof at $150 per month, plus $500 attorney's fees, and that the balance of said $11,000 be paid by the clerk of the court to the defendant E. P. Pond. It also ordered that, upon the defendant Pond making the conveyance, said defendant is entitled to a lease from the plaintiffs for the period of five years from the 1st day of May, 1927, for the portion of the premises therein described, being the rooms occupied by the Winter & Pond Company, at a monthly rental of $25 from the date of the lease. Plaintiffs were directed to execute such a lease, but appellant E. P. Pond, it was provided, should be under no obligation to accept the same.

■ As appears from the opinion of the trial court, contained in the transcript, and from the 'findings and decree, it was of opinion that the rights of Harriet M. Pond, the wife, whatever they might be, were subordinate to the rights of the plaintiffs under the agreement made by them with E. P. Pond for the purchase of the property, for the reason that her rights, whatever they were, were not disclosed by the public records. In this the court was in error, for the reason that the plaintiffs were not innocent purchasers for value, in that they had not parted with the purchase price before ascertaining the rights and claims of Harriet M. Pond. Compiled Laws of Alaska 1913, § 524. The Supreme Court of the United States, as early as 1823, speaking through Mr. Justice Story, stated the rule in Wormley v. Wormley, 8 Wheat. (21 U. S.) 421, 447, 5 L. Ed. 651, as follows:

"It is a settled rule in equity, that a purchaser, without notice to be entitled to protection, must not only be so, at the time of the contract or conveyance, but at the time of the payment of the purchase money."

The rule in that regard is stated by the District Court of Appeal for the Second District of California, in Lindley v. Blumberg, 7 Cal. App. 140, 93 P. 894, 897, as follows:

"To entitle a party to protection as a subsequent purchaser in good faith and for value against the title of a grantee under a prior unrecorded deed, he must aver and prove the possession of his grantor, the purchase of the premises, the payment of the purchase money in good faith, and without notice, actual or constructive, prior to and down to the time of its payment; for if he had notice, actual or constructive, at any moment of time before the payment of the money, he is not a bona fide purchaser. Eversdon v. Mayhew, 65 Cal. 163, 3 P. 641; Wilhoit v. Lyons, 98 Cal. 413, 33 P. 325; Beattie v. Crewdson, 124 Cal. 579, 57 P. 463; Kenniff v. Caulfield, 140 Cal. 45, 73 P. 803.

"If it were conceded that the entire $900 were paid, and agreed to be paid, as part of the purchase price for the property (only the rent from January, 1901, to October, 1902, actually was paid), defendant would only be required to refund to plaintiff the amount paid by him before receiving notice of her right in order to enforce her claim to the property. Plaintiff is entitled to be protected only to the extent that he is hurt. Davis v. Ward, 109 Cal. 191, 50 Am. St. Rep. 29, 41 P. 1010; Combination Land Co. v. Morgan, 95 Cal. 552, 30 P. 1102."

The rule, as stated by the Supreme Court of California in Kenniff v. Caulfield, 140 Cal. 34, 45, 73 P. 803, 806, is as follows:

"The burden in that respect was upon him. To entitle a party to protection as such a purchaser, he must aver and prove the possession of his grantor, the purchase of the premises, the payment of the purchase money in good faith and without notice, actual or constructive, prior to and down to the time of its payment; for, if he had notice, actual or constructive, at any moment of time before the payment of the money, he is not a bona fide purchaser. Eversdon v. Mayhew, 65 Cal. 167, 3 P. 641; Davis v. Ward, 109 Cal. 190, 41 P. 1010, 50 Am. St. Rep. 29; County Bank of San Luis Obispo v. Fox, 119 Cal. 64, 51 P. 11."

This is the general rule, and is stated to the same effect in Warvelle on Vendors, vol. 2 (2d Ed.) § 610, p. 712:

"Such consideration must further have been paid at the time of the execution of the deed, or at least before notice of any prior rights or equities; and if there has been a partial payment before such notice the purchaser will be protected to that extent, and for the amount so paid will be entitled to a lien upon the land.

"The general rule above stated seems to be imperative, and it is not sufficient that the purchaser had no notice when he purchased, if notice was given him before he paid the purchase money; and if a payment is made by him after he has such notice, it is paid in his own wrong, and he must bear the loss."

See 27 Ruling Case Law, § 468, to the same effect, where the rule is thus stated:

"To entitle a grantee to protection as a bona fide purchaser he must have paid the purchase money as well as have acquired the legal title without notice; notice before payment is effectual to deprive him of such protection, though he may at the time have acquired the legal title; and it is not sufficient that the purchaser may have secured the payment of the purchase money, or may have paid a part of it; but if a part of the purchase money is paid before notice, the purchaser, according to the better view, may be entitled to protection to the extent of such payment, and the court in its awarding relief against such a purchaser should make a provision in its decree either making a return of the money paid a condition precedent to any relief at all or declare a lien therefor on the land."

See, in support of this statement, Fisher v. Shropshire, 147 U. S. 133, 13 S. Ct. 201, 37 L. Ed. 109; Johnson v. Georgia Loan & Trust Co. (C. C. A.) 141 F. 593, 597; Fowler v. Merrill, 11 How. 395, 13 L. Ed. 736.

During the trial of the case, the intervener Harriet M. Pond offered in evidence a deed from appellant E. P. Pond to one-half interest in said real estate, and offered to show that it was executed and delivered to her in 1924. Objection was made to the offer of the deed on the ground that:

"* * * In the first place, there is nothing to show the plaintiffs had any notice of it, and the further reason it isn't pleaded. * * * There is nothing in the pleadings to indicate there was such a deed.

"Mr. Wickersham. We set up there was a contract between the people that they should own the property half and half; it is for the purpose of showing their relationship with respect to the property I offer this deed. It is true it wasn't on record at the time the paper was signed, but this—

"The Court. I may have read, but I don't carry in mind the answer.

"Mr. Wickersham. Shall I read that to the Court? It won't take but a moment. (The answer herein was then read by Mr. Sullivan.) * * *

"Mr. Wickersham. May it please the court, Mrs. Pond has appeared specially by intervention, and filed her complaint in this case, setting up substantially the same facts set up in her husband's answer and affirmative defense. Winter & Pond Company also intervened and set up its rights as intervener, substantially as set out by Mr. Pond in his affirmative defense. Their intervention has been allowed and it is before the court also. With reference to his deed from Mrs. Pond, it is admitted the deed was not on record when this memo was signed by Mr. Pond on the night of April 21, 1927, and is offered for the purpose of showing the relationship between Mr. Pond and his wife with reference to their property rights, that she was entitled to her interest in these properties. It is merely for the purpose of connecting her in that way with the ownership of this property we have alleged.

"The Court. You have not specifically alleged that conveyance to her?

"Mr. Wickersham. No, it is under the general clause.

"The Court. You claim as his wife she is entitled to a half-interest?

"Mr. Wickersham. That is correct. May it be received for that purpose?

"The Court. I will sustain the objection."

Thereupon the appellant offered to show that on October 9, 1924, defendant E. P. Pond made a deed to Harriet M. Pond, his wife, of the property in question and delivered the deed to her and it was not recorded on April 26, 1927. This was objected to as incompetent, irrelevant, and immaterial, and the objection was sustained and exception taken. Counsel does not specifically state in his offer that the deed was delivered before the contract herein sued upon, but it is evidently the view of the trial court that, being unrecorded, the deed was immaterial. No point is made with reference to the question of delivery by the appellee in his brief, nor was any point made thereon during the trial. It is a fair presumption that, if the deed had been received in evidence, it would have been followed by proof as to the time of delivery. The rejection of the deed upon the ground advanced by the appellee precluded further evidence upon that subject.

As to the objection that the deed from E. P. Pond to his wife, Harriet M. Pond, was not mentioned in the complaint in intervention, it is alleged that she was the owner of an undivided half-interest in the property, and this is an allegation of an ultimate fact. It is true that the allegation is apparently a conclusion derived from the other allegations with relation to the community property interest of the wife, but the ultimate fact asserted by Harriet M. Pond in her complaint was that she was the owner of an undivided half-interest in the property. Failure to allege that she acquired this in any particular manner, by deed or otherwise, is immaterial,

for such allegation would be merely evidentiary matter.

"The court further finds that there was not then of record in the office of said recorder, anything to indicate that either the intervener Harriet M. Pond or the intervener Winter & Pond Company had or claimed to have any interest in or to the premises hereinbefore described, either as owners, lessees or otherwise, and that the title to the said property and the whole thereof, from said 26th day of April, 1927, until after the 30th day of April, 1927, stood in the name of said E. P. Pond and in his name alone, and that there was no claim or incumbrance thereon except the mortgage of the aforesaid B. M. Behrends Bank, above referred to, and that until long after the 30th day of April, 1927, neither the plaintiffs nor either of them had any knowledge that either Harriet M. Pond or the Winter & Pond Company claimed any interest to the premises hereinbefore described, either as a legal or equitable owner or as lessee or otherwise, and that not until long after the 30th day of April, 1927, did the plaintiffs or either of them possess knowledge of any facts or circumstances that would lead them or either of them to inquire, or that would place them or either of them upon inquiry in regards to any claim or interest of Harriet M. Pond or the Winter & Pond Company to the premises above described, either as owner or lessee or otherwise."

■■■ As it will be necessary to reverse the case because of the erroneous ruling with reference to the admissibility of the deed from E. P. Pond to Harriet M. Pond, we will not undertake to follow in detail the assignment of errors or points raised in the brief, but will confine our attention to points that will recur upon the retrial of the case. The rights of Winter & Pond Company, in so far as they are based upon a lease or an agreement for a lease entered into before the date of the contract with the appellees, are not subordinate to the contract of the appellees, not only for the reasons above stated as to the interests of Harriet M. Pond, but also for the further reason that the corporation was in actual possession of a portion of the premises at the time of the making of the contract herein sued upon, and that such possession is notice to the appellees of their rights in the premises. Pomeroy's Eq. Jur. (3d Ed.) vol. 2, § 641. The duty was upon the purchaser to make inquiry as to the title of the tenant, and the mere failure of the tenant to interpose objections to the contract of sale through Mr. Winter, who was present, does not operate as an estoppel because the affirmative duty was upon the purchaser to make inquiry as to the title under which Winter & Pond Company held possession. At most the doctrine of estoppel, if otherwise applicable, would only be effective against Winter & Pond to the extent to which the purchaser was prejudiced by their conduct, while in this case the purchaser was not so prejudiced, because the money so paid by them was returned.

At the time of the trial, the purchase money, $11,000, had been deposited with the clerk. The trial court having found the rental value of the property to be $150 per month, directed the clerk to return to the plaintiff from their deposit $150 per month; at the same time the trial court directed that the purchasers, upon receiving a deed, should execute a lease to the vendor for those portions of the premises occupied by Winter & Pond Company at a rental of $25 per month for a period of five years from April 26, 1927, if requested so to do by the appellants. The effect of these provisions was that the purchasers were entitled to possession of the premises purchased from the date of the purchase, and, in default of such possession, were entitled to the entire rental value of the premises. This is not in accord with the contract. The agreement for a lease at $25 per month was in effect a reservation by the vendor of the right of possession to that portion of the premises occupied by Winter & Pond Company. If the agreement was enforced, it should have been enforced in its entirety, and the Winter & Pond Company should have been protected in their possession and occupancy of the premises by the reservation made by their landlord. In this connection it should be stated that, not only did the Winter & Pond Company claim that there was an agreement for a five-year lease from E. P. Pond to them before the contract of the appellees was entered into, but shortly thereafter a lease was executed to them by E. P. Pond for the entire premises at a monthly rental of $120 per month. It is therefore clear that they are entitled to the possession of that portion of the premises reserved to their landlord in a contract with the appellees.

■■■ Appellants claim that the contract, findings, and the decree are uncertain, in that the premises are not sufficiently described therein. So far as the contract is concerned, the description is clearly sufficient. It is a contract for the purchase "of a building and premises on Lower Front street, Juneau, Alaska, occupied by Winter & Pond Company, and which is owned by the undersign-

ed." The contract also agrees "to rent to the undersigned (E. P. Pond) the rooms upstairs in the said building now occupied by the said Winter & Pond Company, and also the rooms downstairs now occupied and used by the Winter & Pond Company for developing pictures, for the sum of $25 per month for the period of five years from date hereof." The vendor owned no other property in that vicinity than lot 23 in block 1 of the Pacific Coast addition to the city of Juneau, Alaska, and the court decreed that this property should be conveyed by E. P. Pond to the appellee. It is further ordered and decreed that, upon appellant E. P. Pond making a conveyance thereof, he was entitled to a five-year lease for the upstairs rooms in the building situate on the premises conveyed, occupied by Winter & Pond Company on April 26, 1927, and also the rooms downstairs then occupied and used by the said Winter & Pond Company for developing photographs, at a monthly rental of $25 from the date of said lease, which lease shall not be transferable.

In the event of another decree, this description should be made more definite and certain so it will not be necessary to go beyond the terms of the decree to ascertain the description of the property leased.

As we have heretofore said, the rights of Harriet M. Pond and the Winter & Pond Company, existing at the time of the execution of the contract of sale sought to be specifically enforced herein, are not affected by the terms of that agreement. In the event E. P. Pond is able to convey only a half interest therein, the purchaser seeking specific performance is entitled to have the purchase price diminished pro tanto. Erwin v. Myers, 46 Pa. 96; Pomeroy, Specific Performance of Contract (3d Ed.) §§ 439–441; 25 Ruling Case Law, § 53. If it appears that the tenants, Winter & Pond Company, are entitled under an agreement for a lease to a longer period of occupancy or to a larger amount of space than reserved by the vendor in the contract with the appellee in the event the vendee seeks specific performance, he is entitled to an abatement of the purchase price by reason of such incumbrance. The rule is thus stated in Ruling Case Law (25 R. C. L. § 53):

"If the vendor covenants to convey a clear title, and it is in fact subject to a leasehold, the purchaser may have specific performance of the contract to convey, with an abatement because of the incumbrance, so far as he is able to do so."

It is unnecessary upon this appeal to discuss the question of adequacy of consideration, as the rules in relation thereto are well settled.

Only one other point discussed by counsel requires consideration. Appellants contend that the contract shows the purpose on the part of the vendees to commit a fraud upon the Winter & Pond Company by the provisions with relation to the five-year lease which is reserved to the vendor as follows: "Provided, however, that the undersigned (E. P. Pond) shall not transfer said lease or said rooms."

This proviso, as we have already shown, could not affect the rights of the Winter & Pond Company in existence at the time of the contract. Therefore it could not be fraudulent.

Appellant objects to the attorney's fees of $500 allowed plaintiff by the trial court. The statute of Alaska authorizes the successful litigant in a case of this kind to recover a reasonable attorney's fee to be fixed by the court. Compiled Laws of Alaska 1913 § 1341; Session Laws of Alaska, 1923, c. 38. We do not think the subsequent act of the territorial Legislature fixing an amount to be given to the plaintiff as costs repeals this legislation.

Decree reversed.