[S. F. No. 2471. Department Two.—August 27, 1903.]

## MARY KENNIFF, Respondent, v. JOHN CAULFIELD, Appellant.

DEED—DELIVERY—DESTRUCTION BY GRANTOR.—A deed takes effect from its delivery by the grantor to the grantee; and the fact that it was placed by the grantee after delivery where it was accessible to the grantor, and that the grantor subsequently took and destroyed it, will not affect the title of the grantee.

ID.—VALIDITY OF DELIVERY—INTENT OF GRANTOR—QUESTION OF FACT.— A valid delivery of a deed is accomplished when the conduct and acts of the grantor manifest a present intent to dispose of the title

conveyed by the deed. No particular form of delivery is necessary; but any act or thing which manifests such an intent is sufficient to establish it. It is always a question of fact, and must be determined by the circumstances surrounding each transaction.

ID.—ACCEPTANCE OF DEED.—The acceptance of the deed by the grantee is sufficiently manifest from the delivery and retention of the deed. The grantee was not required to make any explicit declaration of acceptance of the deed made by the grantor for the grantee's express benefit, under a prior declaration of the grantor's intention to make the conveyance.

ID.—LOSS OF DEED—SECONDARY EVIDENCE—DISCRETION.—Preliminary proof of the loss of a deed is addressed to the discretion of the trial judge; and where the evidence showed that reasonable search was made in good faith for the lost deed, that it could not ˙be found, or that it had been destroyed by the grantor, the trial judge was justified in admitting secondary evidence of its contents.

ID.—EVIDENCE OF CONTENTS—SUBSTANTIAL PROOF.—It is not necessary in order to admit secondary evidence of the contents of a lost instrument that the witnesses should be able to state the contents with verbal accuracy, but it is sufficient that they are able to state it in substance.

ID.—ORDER OF PROOF—COPY OF DEED—CONDITIONAL EVIDENCE.—Where a copy of the deed was admitted on condition that proper proof of the loss of the deed should be supplied, any error in admitting it at the time was cured by subsequent proof of its loss.

ID.—SUBSEQUENT DEED BY GRANTOR—BONA FIDE PURCHASER—BURDEN OF PROOF—NOTICE—QUIETING TITLE.—Where, after destruction of the deed delivered to the plaintiff, the grantee executed and delivered a deed to the defendant, the burden of proof was upon the defendant to show that he was a *bona fide* purchaser for value without notice of plaintiff's title; and where it appears that he had notice of facts sufficient to put him on inquiry as to plaintiff's rights, a judgment quieting plaintiff's title against him will not be disturbed.

APPEAL from a judgment of the Superior Court of Santa Clara County and from an order denying a new trial. A. L. Rhodes, Judge.

The facts are stated in the opinion of the court.

J. R. Welch, for Appellant.

The finding of constructive notice to the defendant is not sufficient to show a notice imputed by law, there being no finding of duty to make inquiry. (Civ. Code, secs. 18, 19; *Tarke* v. *Bingham,* 123 Cal. 163, 166; *Bank of Mendocino* v. *Baker,* 82 Cal. 114; *Prouty* v. *Devin,* 118 Cal. 258; *Wilkerson* v.

*Thorpe,* 128 Cal. 225; *Packard* v. *Johnson,* 57 Cal. 180.) There is no finding of the ultimate fact of notice. (*Prouty* v. *Devin,* 118 Cal. 258.) In order to constitute a delivery, the grantor must have parted with all control over the instrument. (*Hibberd* v. *Smith,* 67 Cal. 563;[1] *Denis* v. *Velati,* 96 Cal. 223.)

H. L. Partridge, and F. C. Jacobs, for Respondent.

The finding that plaintiff had notice sufficient to put him upon inquiry, and that he made none, is sufficient. (Civ. Code, sec. 19.) Judgment must go to the first grantee, in the absence of a finding that the second grantee had no notice. (*Landers* v. *Bolton,* 26 Cal. 419; *Randall* v. *Duff,* 79 Cal. 127.) The burden of proving the absence of notice of a prior deed is upon the subsequent grantee. (*Colton* v. *Seavy,* 22 Cal. 504; *Long* v. *Dollarhide,* 24 Cal. 227; *Landers* v. *Bolton,* 26 Cal. 419; *Eversdon* v. *Mayhew,* 65 Cal. 167; *Wilhoit* v. *Lyons,* 98 Cal. 413; *Beattie* v. *Crewdson,* 124 Cal. 577; *Black* v. *Sharkey,* 104 Cal. 250.) There was no sufficient proof of diligent and exhaustive search for the lost deed. (Code Civ. Proc., sec. 1855; *King* v. *Randlett,* 33 Cal. 318; *Caulfield* v. *Sanders,* 17 Cal. 573; *Taylor* v. *Clark,* 49 Cal. 671; *Fallon* v. *Dougherty,* 12 Cal. 105; *Folsom* v. *Scott,* 6 Cal. 462; *Lawrence* v. *Fulton,* 19 Cal. 689; *Byrne* v. *Byrne,* 113 Cal. 298-299.) There was no sufficient proof of the contents of the instrument. Such proof must be clear and certain. (*Edwards* v. *Noyes,* 65 N. Y. 127; *Nicholson* v. *Tarpey,* 124 Cal. 447; *United States* v. *Britton,* 2 Mason, 464.) The proof of delivery was sufficient. (9 Am. & Eng. Ency. of Law, 2d ed., p. 153, n. 4, and cases cited.) The delivery being absolute in form, the deed cannot be defeated by any oral understanding of the parties. (*Mowry* v. *Heney,* 86 Cal. 475; Devlin on Deeds, secs. 286-314.) Nor can the fact that it was where both grantor and grantee had access to it change its legal effect. (Devlin on Deeds, sec. 284.) The question of delivery is one of fact. (*Hastings* v. *Vaughn,* 5 Cal. 316; *Hibberd* v. *Smith,* 67 Cal. 547;[2] *Black* v. *Sharkey,* 104 Cal. 281.) Plaintiff is only required to show reasonable diligence in the attempt to find the original writing before secondary evidence of its contents is admissible, and search should be made in the place

[1] 56 Am. Rep. 726.          [2] 56 Am. Rep. 726.

where the document was last seen, and inquiry made of the person who last had the instrument in his possession. (*Fletcher* v. *Jackson*, 2 Aiken, 215;[1] Greenleaf on Evidence, chap. VI, sec. 558; *Patterson* v. *Keystone Mining Co.*, 30 Cal. 365; *King* v. *Randlett*, 33 Cal. 320; *Taylor* v. *Clark*, 49 Cal. 671; *Juzan* v. *Toulmin*, 9 Ala. 662.[2]) The object of the proof of loss is merely to establish a reasonable presumption of the loss of the instrument. (Greenleaf on Evidence, chap. VI, sec. 558.) The question of sufficiency of preliminary proof is for the court, and its ruling will not be disturbed, except for manifest abuse of discretion. (Greenleaf on Evidence, chap. VI, sec. 558; *Bagley* v. *McMickel*, 9 Cal. 449; *Gorgas* v. *Hertz*, 150 Pa. St. 538; *Bain* v. *Walsh*, 85 Me. 108.) Where a party has been deprived of an instrument by fraud, secondary evidence of its contents is admissible. (*Grimes* v. *Kimball*, 3 Allen, 518.) The proof of the contents was sufficient. It is not necessary to prove an exact copy. Proof of the substance is sufficient. (*Posten* v. *Rassette*, 5 Cal. 470; *Collier* v. *Corbett*, 15 Cal. 186; *Nicholson* v. *Tarpey*, 124 Cal. 447; *United States* v. *Britton*, 2 Mason, 464.)

LORIGAN, J.—This is an action to quiet title, in which judgment was rendered for plaintiff. Defendant moved for a new trial, which was denied, and from the order denying said motion, and from the judgment he appeals.

The court found that on the 26th of November, 1894, one Mary Glynn was the owner of the premises in controversy, and on that day, in consideration of five dollars, executed and delivered to the plaintiff, a grant, bargain, and sale deed of them; that said deed was never recorded; that it was lost or destroyed, and that plaintiff had made due and diligent search and inquiry, but unsuccessfully, to find it; that on the seventh day of January, 1899, said Mary Glynn, in consideration of the sum of ten dollars and other good and valuable considerations, conveyed the said premises to the defendant by a grant, bargain, and sale deed, which was thereafter duly recorded; that defendant, before the date when he took his said conveyance, had sufficient notice of the prior unrecorded deed to the plaintiff, to put him upon inquiry concerning it,

[1] 56 Am. Dec. 100.          [2] 44 Am. Dec. 459.

and that he made no effort, or inquiry whatever of any person, to ascertain whether or not said Mary Glynn had parted with the title to said property, prior to the conveyance to him; that defendant had no right, title, or interest in said property, and that plaintiff since the twenty-sixth day of November, 1894, had been, and was, the owner in fee, and entitled to the possession of said property.

The defendant, upon this appeal, particularly challenges the sufficiency of the evidence to sustain the findings as to the nature of the conveyance made by Mary Glynn to the plaintiff; its delivery to and acceptance by her; its loss and diligent search for it; that the defendant had sufficient notice of the existence of said prior conveyance to put him upon inquiry, and the general findings in favor of plaintiff and against defendant as to ownership.

On the general finding of ownership in plaintiff no particular discussion will be necessary, because it must stand, or fall, as we determine whether the special findings challenged are, or are not, sustained by the evidence, and the special findings will, with the evidence applied to each, be taken up and considered in their order.

It appears from the evidence that Mary Glynn, and plaintiff, had known each other for a great many years; that Mrs. Glynn was the godmother of plaintiff's daughter, and was on very friendly and intimate terms with both of them. Mrs. Glynn's husband was dead. She had no children, and defendant was a nephew of her deceased husband. In March, 1894, Mrs. Glynn, then about eighty-five years of age, became ill and sent for the plaintiff, who remained with her for many months, assisting her in her illness and ministering to her comfort. After her recovery, and a few days prior to the making of the deed to plaintiff, and while plaintiff was still living with her, Mrs. Glynn sent to San Francisco for plaintiff's daughter, Mrs. Peterson, upon whom she depended to attend to her business. Upon her arrival in San Jose, she accompanied Mrs. Glynn, at her request, to the office of a Mr. Salisbury, a conveyancer and notary, for the purpose of making the deed in question to plaintiff. At Mrs. Glynn's direction, Mr. Salisbury prepared a deed of the premises in controversy to plaintiff, which she signed and acknowledged,

and which he, as notary, properly certified and handed to her.
She handed it to Mrs. Peterson, telling her to take it home,
whereupon Mr. Salisbury told her she would have to deliver
the deed herself. They thereupon returned to Mrs. Glynn's
residence, where plaintiff had remained.

So much for the general facts concerning the making of the
deed.

1. Now, as to the nature of the instrument:—

The testimony on this point was solely from witnesses called
on the part of plaintiff; Mrs. Peterson, who read, and heard
the deed read; Mr. Hoback, a clerk in Mr. Salisbury's office,
who witnessed the execution of it by Mrs. Glynn; and Mr.
Salisbury, who drew it.

Mrs. Peterson testified that it was a deed of gift; both Ho-
back and Salisbury testified that it was a grant, bargain, and
sale deed. In this conflict, it was the exclusive province of the
court to determine, what witnesses as to the fact, were most
entitled to credit, and doubtless concluded (we are satisfied
correctly-) that the testimony of a conveyancer, whose busi-
ness it is to know the different forms of conveyance in use by
him, and whose recollection is addressed to the particular form
of a given conveyance drawn by him, is more to be trusted and
relied upon, than the recollection of a person who is not shown
to have any knowledge of the different forms under which
conveyancing is usually done.

2. As to the finding of delivery to, and acceptance by, the
plaintiff, of the deed:—

The only testimony on this point is that of plaintiff and her
daughter. The plaintiff testified that upon the return of Mrs.
Glynn and Mrs. Peterson with the deed, Mrs. Glynn, address-
ing the latter, said (we quote from the record): " 'Jennie,
you take the deed now that I drawed off for your mother and
see how she likes it.' My daughter read it to me, and then
Mrs. Glynn asked me how I liked it. I says: 'I guess that is
all right any way.' That is all I said. 'Now,' says she, 'you
give that deed to her,' she says. She took it out of Jennie's
hand and says: 'Now, hold out your hand—putting it in my
hand—this house and lot is yours and everything that is on
the place. Now,' she says, 'go and put it in the bureau
drawer.' I put it there as she told me.'' Mrs. Peterson testi-

fied that upon their return to the house she (both plaintiff and Mrs. Glynn being illiterate) read the deed to them, and thereupon (we quote again from the record) : "Mrs. Glynn gave it to my mother and said: 'Now, are you satisfied?' and put it away. I gave the deed back to Mrs. Glynn. She gave it to my mother right away. I was present. My mother put it in the bureau drawer. I have not seen it since that time."

We cannot see how any doubt of the delivery of the deed in question can arise under this evidence.

The delivery was attended with more than usual formality, doubtless arising from the statement made to Mrs. Glynn by Salisbury, the notary, that she must make the delivery to plaintiff herself.

A valid delivery is accomplished when the conduct and acts of a grantor manifest a present intent to dispose of the title conveyed by the deed. There is no particular form necessary, but any act or thing which manifests such an intent is sufficient to establish it. It is always a question of fact, and must be determined by the circumstances surrounding each particular transaction.

Counsel for appellant insists, that because the deed was placed by plaintiff in a bureau drawer in Mrs. Glynn's room, equally accessible to both of them, that no delivery was effected. The evidence shows that when the deed was handed to plaintiff she was then living, and for a long time thereafter continued to live, with Mrs. Glynn, occupying the same room with her in which the bureau was located. Under the circumstances, the bureau drawer was the most available, and probably the safest, place for its preservation. Plaintiff was not required to carry it about her person, or put it under lock or key, or suspect the honesty of her grantor as to its safety.

Nor is it of any consequence after the delivery is perfected, that the instrument is placed where it is equally accessible to the grantor and grantee. A sufficient delivery to convey title is accomplished when there is complete delivery in fact. The accessibility of the grantor and grantee to the conveyance, may be some evidence to be considered upon the question whether delivery has, or has not, been made; but, if it has been made, the placing of the instrument where it may be subsequently taken away by the grantor, does not affect the prior delivery.

Nor can there be any serious question as to the proof of acceptance.

This is not a case, where it appears that the deed had not actually been delivered to the grantee, because it is usually in such a case that the question of acceptance arises. It is then requisite to show (if from the particular transaction itself the law does not presume acceptance), that the grantee had notice of the execution in his favor, and proof of such other circumstances as will raise a presumption of his acceptance. Nothing of the kind arises here. The evidence shows that Mrs. Glynn delivered the conveyance to the plaintiff when she returned from the notary's, and that plaintiff received it and retained it until it was lost, or surreptitiously removed. She was not required to make any explicit declaration that she accepted it. It was made for her express benefit, under a prior declaration by Mrs. Glynn that she intended to convey her the property.

3. As to the finding of loss of the deed and diligent search by plaintiff to produce it:—

The general rule concerning proof of a lost instrument is, that reasonable search shall be made for it in the place where it was last known to have been, and, if such search does not discover it, then inquiry should be made of persons most likely to have its custody, or who have some reason to know of its whereabouts.

The party must show that he has in good faith, and to a reasonable degree, made an effort to discover the instrument, and to that end has exhausted all sources of information and means of discovery which were open to him, and which in the nature of the case were possible. No fixed rule as to the necessary proof to establish loss, or what constitutes reasonable search, can be formulated. The terms "reasonable search" and "in good faith," applied to proof of lost instruments, must be construed and defined under the facts in each particular case; there is no inflexible definition under which they can be applied to all cases. The sole object of such proof is, to raise a reasonable presumption, merely that the instrument is lost, and this is a preliminary inquiry addressed to the discretion of the judge. On this subject it is said: "The rigor of the common law . . . has been relaxed in this respect, and

non-production of instruments is now excused for reasons more general and less specific, and upon grounds more broad and liberal than were formerly admitted. If any suspicion hangs over the instrument, or that it is designedly withheld, a rigid inquiry should be made into the reasons for its non-production. But where there is no such suspicion, all that ought to be required is reasonable diligence to obtain the original—in fact, courts in such cases are extremely liberal. And as far as the sufficiency of the proof so offered is concerned, the rule in questions of this character is, that the trial judge is to determine the sufficiency of the proof. Under the facts and circumstances developed in the case, if they are sufficient to reasonably satisfy the mind of the court that the original is lost, and that it cannot be found after search made at the proper place, that is all that is necessary, and the sufficiency of the proof of the search being in general left to the discretion of the trial judge, this court will not review its rulings in that respect, unless the proof is manifestly insufficient to have warranted the secondary evidence." (*Juzan* v. *Toulmin,* 9 Ala. 662;[1] *Gorgas* v. *Hertz,* 150 Pa. St. 540; *Bain* v. *Walsh,* 85 Me. 109; *Jernigan* v. *State,* 81 Ala. 60; *Kleiman* v. *Gieselmann,* 114 Mo. 443.)

There can be no pretense here, that there was anything about the deed which would constrain the plaintiff from producing it, or anything in the evidence as to its loss, and the search for it, to imply bad faith in its non-production. The evidence shows that when it was delivered to plaintiff she was living at Mrs. Glynn's house, occupying the same room with her, in which the bureau was located, and that Mrs. Glynn directed her to put the deed in the bureau drawer, which she did. It remained there about seven months, during which period it seems plaintiff was still residing there. She thereafter discovered its disappearance, and on this point she testified: "It remained in that bureau drawer seven months. I cannot tell where it is now. I went to the Farmers' Union on the eighth day of May. The deed was in the bureau drawer that day, and when I came back I went in to see about the room as I occasionally done, and the deed was gone. I have never seen it since." She further testified that she searched

---

[1] 44 Am. Dec. 459.

no other place than the bureau drawer for the deed. Failing to find it there, she spoke to Mrs. Glynn about it, who said that there was something strange about it, and that somebody took it to make some mischief. We do not perceive what other effort she could have made. She searched the last known place of its deposit, and made inquiry of the only other person who had access to it. This showing was sufficient to raise a presumption of its loss, and sufficient evidence for the trial judge upon which to allow secondary evidence of its contents, and upon which to base the finding of loss and due diligence towards discovery. In addition to this, the evidence of the witness Mrs. Wynn satisfactorily shows, that subsequent to plaintiff's discovery of its loss, Mrs. Glynn had the deed in her possession and burned it.

While discussing this branch of the case, it may be as well, because it is germane to the subject, to dispose of the point, fairly presented, we think, by the appellant, though questioned by respondent, that, assuming proof of. loss and diligent search for the deed to have been made, yet the contents of the deed were not sufficiently proven.

We think, however, that the testimony of Mr. Salisbury, the conveyancer who drew it, sets that matter entirely at rest. He testified that a blank form of grant, bargain, and sale deed shown him, was absolutely the same as he used in making the conveyance in question; that he invariably used that form; that he got the description for the conveyance to plaintiff from the deed under which Mrs. Glynn acquired the property a few years before, and that he inserted the same description in the deed he drew. "I am sure [he said] that the deed contained a description of the lot—that is, of the Phelan tract, part of the Schiele tract. . . . I know that the deed between Mary Glynn and Mrs. Kenniff was to lot six of that subdivision. It was on Henry Street, west of the Alameda." There was no evidence to the contrary on this point, and there was no question as to the parties to the deed, the consideration, the signature of Mrs. Glynn, or the proper certification by the notary.

It is not necessary, in order to admit evidence of the contents of a lost instrument, that the witnesses should be able to testify with verbal accuracy to its contents; it is sufficient if

they are able to state it in substance. The rule in this respect is correctly declared in *Edwards* v. *Noyes,* 65 N. Y. 127, as follows: "Parol evidence to establish the contents of a lost deed should be clear and certain. It should show that the deed was properly executed with the formalities required by law. It should show all the contents of the deed, not literally, but substantially. If anything less than these requirements would suffice, evil practices which it was the object of the statute of frauds to prevent, would be encouraged." This doctrine is expressly approved in *Nicholson* v. *Tarpey,* 124 Cal. 447, and was previously declared by this court in *Posten* v. *Rassette,* 5 Cal. 470, and *Collier* v. *Corbett,* 15 Cal. 186.

4. We address ourselves now to the alleged insufficiency of the evidence to justify the finding, that the defendant had sufficient notice of the deed to plaintiff, before the execution of the conveyance to himself, to have put him upon inquiry concerning the prior deed to plaintiff, and that he made no effort, or inquiry of any person, to ascertain whether Mrs. Glynn had parted with the title to such property. The plaintiff, and her daughter, both testified upon this subject. The former stated that the defendant came to the house some time in December, the month subsequent to the execution of the deed to plaintiff, and saw Mrs. Glynn, who was then ill in bed. Plaintiff testified (quoting from the record) : He said to Mrs. Glynn: "I heard you deeded your house and lot away." Mrs. Glynn said: "Yes, and I am not sorry for it. I gave it to the one who deserved it best; that stayed with me late and early. Any time of the night she came away for me. Now I gave it to her. I am rid of it, and you can get out of here.'" Mrs. Peterson, her daughter, testified, referring to the same time and to the same subject: "He came in and said 'How do you do?' She would not speak to him. He said, 'I see you have deeded this property away,' and she said, 'Well, I have, and I have given it to the one that was kind and good to me. This is my property and I can do as I please with it.' "

A. J. Emberger testified on the same subject and said: "Whenever Mr. Canfield came down to San Jose he always came to me. We was good friends, and once along late in the spring he says: 'Can I see Mrs. Glynn? Can't relations get a

show ?' I told him, Mr. Caulfield, I guess Mrs. Kenniff got the house. He says, 'Yes, I heard about it, but I don't believe it.' That is all I spoke to him. Just a kind of joshing way about the house, because I heard from Mrs. Wilson that Mrs. Kenniff got the house. Then I told him about it. He says, 'Yes, I guess. I don't believe the old woman would deed the house away.' '' The defendant when upon the stand denied his presence in the house, or any such conversation as detailed by the plaintiff and her daughter, or any conversation with Emberger. He admitted, however, that he had heard some little talk that the plaintiff made some claim to this property, before Mrs. Glynn's conveyance to him. He could not, however, tell what it was, or what the talk was. He said that he had heard the old lady had made a deed, and that she had kept it and burned it. He heard his wife, and a couple of other women, talking about some papers having been made to some member of the Kenniff family, but that Mrs. Glynn had kept them and burned them.

In order to defeat the claim of plaintiff under the prior deed, it was incumbent upon the defendant to prove, that he was a *bona fide* purchaser of the premises in dispute; that he had paid a valuable consideration therefor, and without notice of plaintiff's claim.

The burden in that respect was upon him. To entitle a party to protection as such a purchaser, he must aver and prove the possession of his grantor, the purchase of the premises, the payment of the purchase money in good faith, and without notice, actual or constructive, prior to and down to the time of its payment, for, if he had notice, actual or constructive, at any moment of time before the payment of the money, he is not a *bona fide* purchaser. (*Eversdon* v. *Mayhew,* 65 Cal. 167; *Davis* v. *Ward,* 109 Cal. 190;[1] *County Bank of San Luis Obispo* v. *Fox,* 119 Cal. 64.)

It will be observed from the above authorities that it is not necessary that he should have knowledge, or even actual notice. It is sufficient if he has constructive notice; that is, such notice as is implied by law. Our code upon this subject declares: ''Every person who has actual notice of circumstances sufficient to put a prudent man upon inquiry as to a

[1] 50 Am. St. Rep. 29.

particular fact, has constructive notice of the fact itself in all cases in which by prosecuting such inquiry he might have learned such fact.'' (Civ. Code, sec. 19.)

Under the authorities cited, and this section, the court undoubtedly determined from the evidence that defendant had notice of the unrecorded deed to plaintiff, and we are satisfied that the court was warranted in so finding. Independent of the evidence of plaintiff and her daughter, which tends to show that the defendant had information that Mrs. Glynn had conveyed the property, and interviewed her upon the subject and was informed that it was true, the other evidence shows that he had sufficient information upon the subject to awake inquiry. And it did not consist of wild statements, suspicious circumstances, or idle rumor. It was information derived from persons who appear to have been familiar with the parties, and was all directed with reasonable certainty to the specific point—that Mrs. Glynn had made a conveyance of this property to the plaintiff. Had he acted prudently in pursuing the information which the evidence discloses he was in possession of, it would have been but a matter of slight diligence to have ascertained from plaintiff herself, that a conveyance of this property had been made to her. As he had sufficient notice to put him on inquiry, and could have ascertained this fact had he made the investigation, the law charges him with the information which, brought him within the familiar rule, *Id certum est quod certum reddi potest.* (21 Am. & Eng. Ency. of Law, p. 584, and vol. 23, p. 494; *Hains* v. *Hains,* 69 Mich. 587; *Prouty* v. *Devin,* 118 Cal. 261.) It is insisted by appellant that this last finding of the court is not as fully made as is required, but we do not deem that contention tenable.

We have thus far discussed all points which we deem of merit against the sufficiency of the evidence to sustain the special findings particularly challenged. We enter into no discussion of the sufficiency of the evidence to justify the general findings, that the plaintiff is the owner of the property, and that defendant has no right or interest therein, because, as said before, the discussion of the special findings disposes of all objections which could be reasonably urged against the general findings of ownership in favor of the

plaintiff, and as the evidence fully sustains the special find-
ing in that regard, it necessarily follows that the finding
·against any title in the defendant is correct.

Certain rulings of the court made upon the trial of the
cause are assigned as error:—

(a) At the close of plaintiff's case appellant moved to
strike out all the evidence, which was denied. Assuming that
this motion was equivalent to a motion for a nonsuit, it was.
nevertheless properly denied, as at that point all the evi-
dence which we have previously discussed as the basis for
the findings, was before the court, and was sufficient to have
then sustained a judgment in her favor.

(b) The court properly denied appellant's motion to strike
out all the testimony of the plaintiff regarding the contents
of the deed in question, because nowhere in her testimony did
she pretend to testify as to its contents.

(c) There was no error in overruling appellant's objection
to the question put to the witness Salisbury, whether a copy
which was handed him was a correct copy of the deed which
he drew for Mrs. Glynn in favor of plaintiff. This was.
merely a preliminary question. It was answered in the
affirmative, and was supplemented by an offer of such copy,.
and its admission in evidence over the specific objection of the
appellant "that no proper foundation had been laid for the
lost deed." It is fairly deducible from the language of the
court, in passing on the objection, that this evidence was ad--
mitted, conditionally, that proper proof of loss of the deed
would be thereafter supplied. This was done, and hence, if
there was any error in admitting the copy at the time, it was.
cured by such subsequent proof of loss.

(d) The court sustained respondent's objections to the
questions propounded by appellant to the plaintiff whether,
first, she was not to stay with Mrs. Glynn and take care of
her, and, second, whether she had not brought suit subse-
quent to the making of the deed against Mrs. Glynn for all
she had done for her, and obtained judgment therefor. The
court, also upon objection, refused to admit in evidence the
judgment-roll in the said case of Kenniff *v.* Glynn—an
action brought for services rendered.

The objections to the first question, and to the admission

of the judgment-roll, were properly sustained. If it were sought to be shown by this line of evidence, that there was an additional consideration for the deed to plaintiff than the money consideration expressed in it, the evidence was immaterial, as the plaintiff made no claim of any other consideration to sustain her conveyance, than the one so expressed. The appellant claims that the judgment-roll was material to establish the time of the burning of the deed as testified to by Mrs. Wynn, but, as its destruction occurred more than a year after its delivery to the plaintiff, the exact date could in no manner be material. Certainly it was not of such importance as to allow otherwise incompetent evidence to be introduced to prove it. The objection to the second question was sustained on the ground that it was not proper cross-examination, and the record shows that the ruling on this ground was correct.

We have disposed of all the points in the case which are urged in the briefs, and which, in our opinion, require consideration, and as we find no reason why either the judgment, or the order appealed from should be disturbed, they are, therefore, affirmed.

McFarland, J., and Henshaw, J., concurred.