[Civ. No. 1861.    Third Appellate District.—May 9, 1919.]

T. M. FOULGER, Respondent, v. TIDEWATER SOUTHERN RAILWAY COMPANY (a Corporation), Appellant.

[1] DEEDS—WANT OF NOTICE OF PRIOR DEED—BONA FIDE PURCHASER FOR VALUE.—A deed to a right of way over a tract of land which, though executed prior in point of time, is not put of record until subsequent to the execution, delivery, and recordation of a deed of trust covering the entire tract, is void as to the grantee under the deed of trust where the latter, at the time it received the trust deed, was wholly ignorant of the existence of such prior deed and of facts which would put it as a prudent person upon inquiry as to the fact of said conveyance or of any claim of interest in the land by the grantee therein.

[2] ID.—SUBSEQUENT PURCHASE WITH NOTICE—PRIORITY.—Under such circumstances, the purchaser of the property at the trustee's sale under the deed of trust is protected against such prior deed, notwithstanding at the time he purchased he had knowledge that the grantee under the prior deed was constructing a railroad across the property.

---

1. Effect of delay in recording instrument on rights of intervening purchaser without notice, note, 7 Ann. Cas. 367.

APPEAL from a judgment of the Superior Court of Stanislaus County. W. H. Langdon, Judge. Affirmed.

The facts are stated in the opinion of the court.

Arthur L. Levinsky for Appellant.

Hawkins & Hawkins for Respondent.

HART, J.—This is an action to quiet title and for damages for the wrongful taking of a certain portion of the land in dispute and for injury to the remaining portion.

On February 15, 1912, one James M. Johnson and his wife deeded to H. C. Leffingwell and Ella E. Leffingwell, his wife, a certain tract of land near Modesto, in Stanislaus County, containing ten acres. The Leffingwells, on December 17, 1913, conveyed the same land to Lottie R. Kerry and William J. Kerry, her husband. On January 16, 1914, the Kerrys borrowed from the Modesto Savings Bank $775 and executed a deed of trust, which was recorded January 26, 1914, to A. L. Cressey and J. J. McMahon, as trustees, to secure the payment of the note given for the amount of the loan. Default was made in the payment of said note and, after due proceedings, said trustees sold the property, under the terms of the deed of trust, to T. M. Foulger, the plaintiff herein, for the sum of two thousand dollars, and executed a deed to the latter, dated July 15th, and recorded July 21, 1916.

It was alleged in the complaint that, "subsequent to the execution of said deed of trust, the defendant, without any right or authority, entered upon said land and premises and constructed thereon a railroad," which runs in a diagonal line across plaintiff's land. It was also alleged that the land was farming land; that it was necessary to irrigate the same and that the construction of the railroad cut off plaintiff's ditches and water supply; that the construction of the railroad severed plaintiff's land into two fields and that it was necessary for him to construct a crossing over said railroad at a cost of fifty dollars; that it was necessary to siphon water across said railroad at a cost of one hundred dollars; that by reason of said severance the market value of the land has depreciated four hundred dollars; and that plaintiff is damaged in the sum of $250 by reason of being deprived of the use of

the land occupied. Total damages in the sum of eight hundred dollars were asked for.

The complaint. was filed on September 3, 1917. On the sixth day of April, 1917, defendant recorded a deed from H. G. Leffingwell to Tidewater Southern Railway Company, conveying a right of way fifty feet wide across the land in question for railroad purposes, which deed was dated August 15, 1912.

T. M. Foulger, the plaintiff, was sworn as a witness and testified: That, some time prior to May 25, 1917, he examined the property in question; that at that time he saw no railroad across the land, saw nothing indicating a railroad and saw no stakes upon the ground; that, on July 15, 1916, he attended the trustees' sale of the property and bid two thousand dollars for it, and in addition he was to pay the interest and taxes above that amount, amounting to thirty-five dollars, and that he did pay such sums for the property. He said that the railroad had been built through his land in a cut, the dirt being piled on both sides; that prior to the building of the road the land had been planted to grapes; that the grapevines had been plowed up and piled to one side; that on the east side of the track is a reservoir, about fourteen by sixteen feet in dimension, made of concrete. The right of way occupied about an acre of the land and the amount on the east side of the track was about half an acre. It was necessary to pipe water under the railroad from the reservoir to the balance of the land. The witness testified as to what he thought would be the cost of piping, crossing the track, etc., and the value of the land taken and that severed.

On cross-examination the witness said that he was on the land on the 14th of July, 1916, the day before he bought it, and saw the railroad being constructed across the land and saw a construction train being operated on the track. He immediately went to Judge Broughton, president of the Modesto Savings Bank, and asked him if he knew anything about a right of way, that they had put a railroad there since he had contracted to buy the land, and that Judge Broughton replied to him: "I knew nothing of it; they haven't got any right of way from me"; that the witness investigated and found they had no right of way; that he did not go to the Railroad Company to see why they were on the land, but spoke to their surveyor, Mr. Lindsey, probably within a week after the sale;

that Mr. Lindsey told him to go and see Mr. Bearce, president of the defendant corporation, but that he did not go to see him; he went to his attorney, who began trying to get a settlement out of the railroad. It appeared that, in the month of May, 1916, and previously to bidding on the property, having in view the purpose of purchasing it, the plaintiff visited and examined the property. At that time no work had been done on the railroad right of way, and respondent saw no indications of a railroad or preparations to build one on and through the property. He then deposited three hundred dollars and entered into an agreement that he would bid at the trustees' sale or forfeit the three hundred dollars. He stated that he bought the land after seeing the railroad there because if he did not he would have to forfeit the three hundred dollars; that he would not have paid two thousand dollars for the property had he known the railroad was there when he "put his contract up."

J. R. Broughton, president of the Modesto Savings Bank, testified that at the date of the trust deed from the Kerrys the trustees, A. L. Cressey and J. J. McMahon, were directors of the bank; that they had nothing to do with making the loan more than approving it at the monthly meeting of the board of directors; that they are the parties who regularly act as trustees for the bank. Questioned as to what he did in making the loan, with reference to an examination of the land, the witness said: "Well, we were familiar with the quality of the land, and were satisfied it was good security for the amount we made the loan, and satisfied that the title was all right"; that they had an abstract prepared and relied upon that; that he had resided in Stanislaus County for thirty-nine years and for thirty years had been familiar with the quality and value of lands in the county; that at the time the loan was made to Mrs. Kerry he had no knowledge that the defendant claimed any interest in the land; that while the bank held the trust deed it never gave the Railroad Company a right to cross the land in question with a track.

Several witnesses testified as to the value of the land, and plaintiff rested.

The defendant called as a witness its engineer, J. C. Lindsey, who testified that, in November, 1911, a survey was made through the lands now owned by plaintiff; that the center line of the railroad was staked out with stakes each one hun-

dred feet, the stakes being approximately eight inches above
the ground; that, in July, 1915, another survey was made and
the stakes reset; that the original stakes were not there "by
reason of the farmers plowing them out and cultivating the
lands"; that defendant began grading on the land in ques-
tion between June 15 and July 1, 1916, the grading was com-
pleted about the 10th of July and the track laid on the 10th,
11th, and 12th of July; on July 11th trains began running
across there.   The witness said that plaintiff came to him on
July 16th and asked about getting payment for the right of
way; witness suggested that plaintiff write Mr. Bearce re-
garding a settlement and also told him that the company had
a deed from a prior owner.   He stated that on the 7th of
July, 1916, railroad ties six by eight inches, eight feet long,
were placed on the land about two feet apart and that steel
rails were brought on to the land on July 11th.

As to what occurred at the time of the second survey,
C. G. Burnett, assistant engineer of defendant, corroborated
the testimony of Mr. Lindsey.

The court found that the said savings bank took the deed
of trust from the Kerrys without knowledge of the convey-
ance by H. C. Leffingwell to the defendant or of facts suffi-
cient to put it upon notice of the said conveyance and that
it did not have notice at the time it took said trust deed
of any claim of the defendant in and to said real estate;
that said bank at the time of taking said deed of trust was
an innocent encumbrancer for value and that the said deed
of trust was received by said bank in good faith and for a
valuable consideration.   It was further found that at the
time plaintiff purchased said property at the trustees' sale
he had notice of the fact that the defendant was at that
time constructing across said land and premises a railroad
and knew that a railroad bed had been graded and that ties
had been placed thereon and rails had been laid upon said
ties and that railroad trains had passed over the rails.   It
was also found that at the trial of this action the defend-
ant stipulated that it only claimed a strip of fifty feet wide
as its right of way.   Other findings were made relating to
the adaptability of the land to farming purposes, the cut-
ting of the land up into two parts by the right of way, the
interference of the right of way with the proper and requi-
site use of a water ditch on said land for irrigating purposes

and the several items of damages suffered by the plaintiff by reason of the existence of the right of way and the maintenance of a railroad track on and over said way, etc. While, as seen, the plaintiff testified that at the time he first visited the land in contemplation of purchasing it he saw or observed no evidence of a railroad track or no indications that a track was to be built thereon, the court made no finding as to that fact.

The judgment is: "That the plaintiff is the owner of all the land hereinbefore described, subject, however, to the easement of the defendant over and across said land upon the strip of land hereinbefore described, and the defendant has the right to maintain upon said right of way fifty feet in width a railroad." Plaintiff was further awarded the sum of five hundred dollars as damages and his costs of suit.

[1] That the deed of H. C. Leffingwell to the defendant, although delivered prior to the making and delivery of the trust deed to the Modesto Savings Bank, was not recorded until after the delivery of said trust deed to said bank, that the bank, at the time it received the trust deed, was wholly ignorant of the existence of the deed to defendant or of facts which would put it as a prudent person upon inquiry as to the fact of said conveyance or of any claim of interest by defendant in the land, and that said bank was, therefore, a bona fide encumbrancer for value, are well-established facts in the case, the trial court having upon sufficient evidence so found. It follows, therefore, as a proposition of law, that the deed of H. C. Leffingwell to the appellant is void as to the bank. (Civ. Code, secs. 1214, 1215.) This, under the sections of the Civil Code just named, is determinative of this appeal, for the plaintiff is protected by and sheltered under the *bona fides* of the savings bank. [2] Therefore, whether plaintiff bought the property with notice of facts which, if followed up by him, were sufficient to have invested him with knowledge of the fact of the conveyance of an interest in the land to the defendant prior in date to the purchase by him, or whether he had actual knowledge of that fact, is wholly unimportant and immaterial. (27 Cyc. 1727; *Logan* v. *Eva,* 144 Pa. 312, [22 Atl. 757] ; *Martin* v. *Jackson,* 27 Pa. St. 504; *Keyser* v. *Clifton* (Tex. Civ.), 50 S. W. 957.)

In *Logan* v. *Eva, supra,* it appeared that Mrs. Eva was the possessor in her separate right of one thousand seven hun-

dred dollars, of which amount she turned over to her husband the sum of one thousand two hundred dollars, to be by him invested in real estate, title to which was to be in her name. The husband bought the property with said money, but in violation of the directions of his wife and of his trust took title in his own name, and thereafter borrowed money from one Keesley and gave the latter a mortgage on said property as security for the loan. One Logan, who then had notice of the trust, purchased the property at the foreclosure sale. There, as here, it was contended that Logan, having notice of the trust in favor of Mrs. Eva or her equitable title thereto, acquired no title to the land by the conveyance to him under the foreclosure sale. The supreme court of Pennsylvania, refusing to sanction the contention, said: "It is well settled that a purchaser of land is unaffected by a secret trust or equity unknown to him, and that he may pass title thereto, untrammeled by the trust, to a person who has notice of it. 'A mortgagee is regarded as a purchaser, and is protected from all secret equities and trusts of which he had no notice. (*Heister* v. *Fortner*, 2 Binn. (Pa.) 40, [4 Am. Dec. 417]; *Cover* v. *Black*, 1 Pa. St. 493.) Notice to a purchaser at the sheriff's sale of the mortgage comes entirely too late, if the mortgagee had no notice when the mortgage was executed.' (*Martin* v. *Jackson*, 27 Pa. St. 504, [67 Am. Dec. 489].)" The court in that case further said: "It must be borne in mind that the rule which protects a purchaser with notice is not the outcome of a tender regard for him. It is the logical sequence of the doctrine that a *bona fide* purchaser, without notice of a secret equity, takes a title unaffected by it. If such a purchaser could only pass his title to persons ignorant of the trust, the market value of his property would be depreciated by the restriction, and his enjoyment of it would be very much impaired. Hence the law declares that the knowledge of his vendee is not in the way of the transmission of his title, untrammeled by the trust."

In *Keyser* v. *Clifton* (Tex. Civ.), 50 S. W. 957, it is held that "the *bona fides* of the mortgagee as to the title passes to the purchaser at the foreclosure sale, regardless of the knowledge of the latter."

Counsel for the appellant insists that the rule enunciated in the above cases has never been and is not now the rule in California, and in support of his position cites the cases of

*Eversdon* v. *Mayhew,* 65 Cal. 163, [3 Pac. 641], and *Kenniff*
v. *Caulfield,* 140 Cal. 34, [73 Pac. 803]. Those cases, as to
the facts, are wholly different from this, and they merely deal
with and apply the well-settled rule that one who takes a
conveyance of real property with notice of a prior equity or
title of another in or to such property acquires no title thereto
or acquires the property subject to the prior equity or inter-
est of which he had knowledge or notice when he received the
conveyance. The cases are not in point here.

That the rule applied in the cases first above referred to
is the California rule is clear from the provisions of section
1214 of the Civil Code. Moreover, the rule is so just and
sound in principle that it ought to be the rule of decision in
every jurisdiction in cases whose facts are analogous to those
of the instant case.

We are persuaded that there is no merit in this appeal, and
the judgment is accordingly affirmed.

Chipman, P. J., and Burnett, J., concurred.

'A petition to have the cause heard in the supreme court,
after judgment in the district court of appeal, was denied by
the supreme court on July 7, 1919.

All the Justices concurred, except Melvin, 'J., and Olney, J.,
who were absent.