GEORGE WASHINGTON, PETITIONER, *v.* COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT.

Docket No. 43408.  Promulgated May 23, 1934.

*Bernhard Knollenberg, Esq.*, for the petitioner.
*Bruce A. Low, Esq.*, for the respondent.

OPINION.

SEAWELL: 1. With respect to the first issue, petitioner contends that by his letter of December 30, 1918, he gave to his wife and three children not only a four-fifths interest in the royalties to become due and payable to him, but a four-fifths interest in the contract with the G. Washington Coffee Refining Co., from which the income was to be derived. Respondent says and contends that the letter was a temporary expression of intention of petitioner expressly limited in duration until petitioner should " in the near future, cause a formal document to be prepared and executed," and that when the formal documents were prepared and executed on March 3, 1919, the letter's purpose and intent was at an end. There was no suggestion in the letter or in the oral evidence that the letter was to be temporary or to be replaced by the family contracts, except as the quotation copied might import. The letter was in force, certainly, until a more formal conveyance of the property it conveyed was delivered. While the letter purports to convey a four-fifths interest in the contract of petitioner with the corporation to his wife and children, the formal family contracts purport to convey only a four-fifths " interest in and to any and all royalties or other sums of money which may, at any time hereafter become due and payable " to petitioner under said contract. If, as the letter purports, an interest in the contract was conveyed, income accruing from that interest—their own property—would be taxable to the wife and children and not to petitioner; but if, as the family contracts purport, only interest in the income from the contract is conveyed, the income would first belong to the petitioner—as the

owner of the property from which the income is derived—and would be taxable to him and not to the wife and children. *Lucas* v. *Earle*, 281 U.S. 111. So we have as a preliminary question to decide whether the letter or the family contracts control the income in controversy. The four instruments of March 3, 1919, were made pursuant to the last sentence of the letter of December 30, 1918, which reads: " Realizing that this may not be the best form of an Assignment I will, in the near future, cause a formal document to be prepared and executed." It will be observed that the promised " formal documents ", the contracts of March 3, 1919, nowhere purport to annul the previous letter. It would require very express terms unequivocally assented to and accepted by the grantees to do so. If the letter makes a conveyance of property not mentioned in the contract, the contract would not, by that circumstance, reconvey such property to the original owner. Title vested in the wife and children by operation of the letter required a conveyance by them to place the title back in the writer of that letter. *Kenniff* v. *Caulfield*, 140 Cal. 34.

The property or property right conveyed by the letter, which is not conveyed by the family contracts, is the corpus from which the income sought to be taxed to petitioner is derived. The letter, therefore, is the all important document and controlling here. Separated into its parts we find: (1) The letter conveys a four-fifths interest in the corporation contract; but (2) it reserves the right to the grantor—petitioner—(a) to alter or modify the contract with the corporation; (b) to change the amount of royalties payable thereunder; (c) to use the income from the four-fifths interest in the corporation contract assigned to liquidate the grantor's financial obligations; (d) to use the income from the four-fifths interest in the assigned corporation contract in paying the family expenses so long as they lived together; and (3) only that part of the proceeds of the four-fifths interest in the contract assigned, or of any modified contract, which remained after paying grantor's obligations and said family expenses was to become the property of and subject " absolutely " to the use of the beneficiaries—the wife and children.

The provision of the letter which purports to " sell and assign " an interest in real estate falls short of the requirements of the common law or of any modification thereof in regard to modern conveyances of land. There is, in the first place, no description of the land, the instrument is not under seal, and there are no words of conveyance or of inheritance. None of the income in controversy was derived from the land, and whether the letter could be construed as a deed sufficient to convey title would be immaterial, except for the fact that care, upkeep, and improvement of the town house and country house were considered by the parties at the time as part

of the family expense and much of the income in controversy was used for that purpose. We conclude for the purposes of this phase of the case that title to the real estate was not conveyed by the letter, and remained the property of the petitioner, and the expenses for its repair and upkeep inured directly to petitioner's personal benefit. Further visualizing the picture of this matter created by the testimony of the witness—the petitioner was the only witness—we note that at about the time the letter and the family contracts were executed or shortly thereafter, a "trust account" or "trust fund" was established by petitioner with the Corn Exchange Bank, into which all the royalty payments of the corporation to petitioner under his contract with it, including the four-fifths interest assigned to his wife and three children as well as his own reserved one fifth, were placed. In his brief petitioner denies that this fund was a trust except in name only. It does not contain all the earmarks of the usual deed of trust, but no express words are necessary to create a trust. *Hibbard, Spencer, Bartlett & Co.*, 5 B.T.A. 464. Considering all the circumstances surrounding the establishment of the "trust fund" in the Corn Exchange Bank, the conclusion seems inescapable that the letter formed a trust for the specific purposes therein set forth and that the bank account was set up in pursuance of the plan of the trust. Petitioner was, in effect, and apparently by tacit consent, the trustee. A trust, however, does not fail because there is no trustee named. All the funds which went into the account were from the royalties; all disbursements from the account were by petitioner's checks, and apparently no other had the right to check on the account; the funds were used, as provided in the letter, to pay petitioner's liabilities and the family expenses. How much were petitioner's financial obligations at the time and what part of them, if any, had been discharged before the taxable years here involved, and what part, if any, were discharged during said years, or thereafter, the evidence failed to disclose. Most of the evidence had reference to years prior to 1925, but the situation created and existing before that year was not shown by petitioner, on whom the burden rested, to have been changed at any time before or during the taxable years. In 1918 petitioner estimated his expenses for one child in school and keeping up the home to have been $25,000 or $30,000 per year, all of which was borne out of said fund. The improvements on the two residences, petitioner stated without reference to time, were quite extensive and quite expensive, and all paid out of the trust fund. It appears from his position as president and in charge of the corporation, his large ownership of its stock, and the acquiescent attitude of his wife and children, the other stockholders, as well as by reason of his reserved rights and powers with reference to the income to be derived from the corporate contract,

794

that the petitioner was effectually in charge and able to handle the royalty contract in practically any manner he desired.

The situation, in short, seems to be that petitioner assigned to his wife and children an interest in his contract with the G. Washington Coffee Refining Co., the income from which, with their acquiesence, he placed in a fund to be used in paying his family expenses, his debts, and the improvement of his real estate. It does not appear that these benefits to himself personally might not have absorbed the entire income from the four-fifths interest in the royalty contract. He had power to so modify and change the corpus of the trust that a part, if not the whole thereof, might be revested in himself. Under such circumstances the income of the trust is taxable to the trustor. Section 219 (g) of the Revenue Acts of 1924 and 1926. *Edmund O. Schweitzer*, 30 B.T.A. 155. We sustain the Commissioner on this issue.

2. Petitioner contends that the payments of $2,000 per month to W. J. Arkell are deductible expenses under section 214 (a) of the Revenue Act of 1926, which provides that " In computing net income there shall be allowed as deductions: (1) All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business."

During the taxable years petitioner appears not to have been engaged in business. The services rendered by Arkell were in years before the taxable years; and the services were not for petitioner, but for the G. Washington Coffee Refining Co. Moreover, even if these things were not true, there is no attempt to show that the expense for the services were ordinary and reasonable as provided by the statute. On this issue we also find for the respondent.

Reviewed by the Board.

*Judgment will be entered for the respondent.*

MARQUETTE, SMITH, McMAHON, MATTHEWS, LEECH, and ADAMS concur in the result.