[Civ. No. 4672. Fourth Dist. Mar. 19, 1954.]

GEORGE J. HAUSEN, Appellant, v. FRANK GOLDMAN, Respondent.

Pines & Walsh for Appellant.

Mack, Bianco & King for Respondent.

MUSSELL, J.—This is an action to determine the owner-ship of a one-third of 1 per cent royalty interest in certain oil land in Kern County. Plaintiff claims 50 per cent of said interest by reason of a partnership or joint venture agreement entered into with defendant in the latter part of 1943. Defendant denied that there was a joint venture between the parties and denied that plaintiff had an interest in said royalty or in the money which defendant had received or was to receive from it in the future.

The trial court found that the interest involved was not created as a result of the agreement of the parties; that they had entered into an oral agreement to work on an oil deal with the Midway McKittrick Oil Company, a corporation, in connection with working out an operating agreement between the Petroleum Supply Company and the Midway Mc-Kittrick Oil Company whereby Petroleum Supply Company would share on an equal basis whatever proceeds arose out of said transaction as a result of said operating agreement; that said Petroleum Supply Company has conveyed to plaintiff his undivided one-half interest in each and all of said interest so created in said oral agreement; that it was not true that plaintiff, pursuant to said agreement, obtained for the mutual benefit of plaintiff and defendant an assignment from Midway McKittrick Oil Company of the one-third of one per cent overriding royalty involved.

Judgment was entered that plaintiff take nothing of and from the defendant and the plaintiff appeals therefrom contending principally that the evidence is insufficient to support the findings and judgment.

Plaintiff, who was a dealer in leases and oil property, had known defendant Goldman, who was manager of the Petroleum Supply Company for many years. Plaintiff testified that in the latter part of 1943 he had a conversation with Goldman as follows:

''Mr. Goldman asked me to see if I could obtain an operating agreement in the name of the Petroleum Supply Company. If we could get that agreement he thought we could make some money on it, and in his opinion there was oil on the property. He says, 'You can go and see Mr. Scoon and some of the other directors, and see if you can obtain that agreement', and I said 'Upon what basis' and he said 'fifty-fifty, as we have always worked up to date'.''

That nothing was said about any interest Goldman may have had in the property; that while he was in Modesto doing business with the Midway McKittrick Company on the operating agreement with the Petroleum Supply Company he ascertained that there was an outstanding royalty on the books of the Midway McKittrick Company of one-third of 1 per cent in the name of one Herb Whiston; that he informed Goldman as to the Whiston interest and Goldman stated that the one-third of 1 per cent interest (involved herein) belonged to him and that Whiston had owed him a lot of money; that he went to see Whiston on August 10, 1946, and Whiston wrote a letter to the Midway McKittrick Oil Company requesting it to transfer all of his interest to said royalty to Frank Goldman; that the company refused to recognize the letter and requested a formal assignment; that on October 31, 1946, he obtained a formal assignment from Whiston as requested; that Mr. Scoon, secretary of Midway would not execute the assignment until commercial production on the lease was shown. (Production was shown in 1947 and on September 16 of that year an assignment was executed by Midway McKittrick Oil Company to Goldman of the one-third of 1 per cent interest here involved.); that he also obtained a 2 per cent overriding royalty in an oil lease for the partnership. (One-half of this override royalty was sold and the remaining 1 per cent was divided between Hausen and Goldman); that Goldman refused to give him an assignment of one-half of the one-third of 1 per cent interest, claiming that it belonged to him and not to the partnership or joint venture.

Goldman testified that in 1934 he obtained an operating agreement with Midway McKittrick Oil Company; that prior

thereto he had obtained quitclaims to the Whiston interest in the lease; that he paid Whiston $1,000 to sign his right, title and interest in the operating agreement to him; that he gave the assignment to one Nick Girard; that at the time he paid Whiston he told him that he would cancel all indebtedness which Whiston had with the Petroleum Supply Company; that in 1943 he had the following conversation with plaintiff Hausen:

"Anyway, I told Mr. Hausen—I said that this is a good piece of property if we can get the thing clean and we can make some money on it, and we will see that the Petroleum Supply Company finance it and you will do the leg work, and you go to Modesto, and I will call the people in Modesto, and you go up there and find out what kind of a deal we have to make, and if it suits me I will execute it on behalf of the Petroleum Supply Company, and I will pay whatever expense is necessary to be paid and anything that is made out of that deal, whether it is rental, bonus or whether it is a royalty interest, the Petroleum Supply Company will give you half of it, not as an assignment of interest, but the money, and the Petroleum Supply Company would retain the title always. That was my original conversation with him, and I explained to him at that time I had given Mr. Whiston $1000 to sign a quitclaim deed on this property in 1934, and I explained I didn't know what interest Mr. Whiston had in the property, but he had some sort of a royalty interest as well as the cloud on the title of the lease."

That Hausen said "O. K. I will go ahead and half of what we get from now on belongs to me"; that he was not giving Hausen any assignment in the matter and that he agreed that Hausen was to receive 50 per cent of everything that he, Goldman, received out of the assignment from the Midway McKittrick Petroleum Company; that when the assignment was made, there was no reference to the interest, if any, of Whiston therein; that in 1934 he knew that Whiston had some sort of an interest in the nature of an override interest in the United States prospecting permit; that after plaintiff inspected the records of the Midway McKittrick Oil Company he, Goldman, ascertained the exact percentage of Whiston's interest as shown by the records of the corporation; that he immediately called Whiston and said "Herb, I paid you for your interest a long time ago, and if I prepare an assignment now, will you sign it?"; that Whiston agreed and did execute a written assignment to Goldman of the one-

third of 1 per cent interest involved on October 31, 1946; that in 1943 he told plaintiff when he had paid Whiston and when he got the quitclaim from him and also told plaintiff that he, plaintiff, would not share in it.

Whston testified that he was indebted to Goldman and the Petroleum Supply Company for various sums; that in 1934 he sold all his interest in Goldman's drilling contract to him for $1,000 and Goldman waived any claim he might have for bills incurred; that he recalled signing some kind of an agreement assigning his interest to Goldman but that he was unable to find the document; that Goldman bought him out and that later he, Whiston, signed the necessary papers.

Plaintiff contends that the one-third of 1 per cent royalty became an asset of the partnership under the terms of the partnership contract. We are not in accord with this contention. This interest was not discussed by the parties until long after the agreement between plaintiff and Goldman was made. The evidence shows that Goldman had "bought out" Whiston for $1,000 in 1934 and acquired the disputed interest by assignment. The Midway McKittrick Oil Company would not recognize this assignment and would not execute an assignment to Goldman pursuant thereto until commencement of oil production on the lease was shown in 1947. The transfer of the disputed interest was then made to Goldman long after the agreement between plaintiff and defendant had been consummated. Plaintiff paid nothing for this interest and procured the necessary papers showing title thereto in Goldman while he was negotiating with the oil company for another royalty interest in behalf of the partnership. Plaintiff performed services for defendant in procuring the execution of the assignment by the Midway McKittrick Oil Company to Goldman but it does not follow that there was an agreement that said interest was, therefore, partnership property. Defendant testified that the agreement was that plaintiff would go to Modesto and see what kind of a deal he could make with the Midway McKittrick Oil Company; that he, Goldman, would execute it on behalf of the Petroleum Supply Company; that the Petroleum Supply Company would pay one-half of anything made out of that deal in money and not as an assignment of interest. Apparently this testimony was believed by the trial court. It is sufficient to support the finding that the agreement between plaintiff and defendant was in connection with the working out of an agreement

between Petroleum Supply Company and Midway McKittrick Oil Company whereby the Petroleum Supply Company would share the proceeds of the operating agreement. The Petroleum Supply Company did share such proceeds and plaintiff received his interest therein. This interest, as plaintiff admits, was separate and distinct from the disputed royalty interest and its ownership is not an issue in this action.

Plaintiff argues that defendant's oral testimony in respect to the allegedly lost 1934 assignment from Whiston to him did not constitute competent and admissible evidence under the parol and best evidence rules for the reasons that there was no evidence on the part of defendant that he had made any reasonable effort to locate the lost assignment and that his oral testimony was legally insufficient to establish the contents of said lost document under section 1937 of the Code of Civil Procedure. This section provides that an original writing must be produced and proved except as provided in sections 1855 and 1919. If it has been lost, proof of the loss must first be made before evidence can be given of its contents. However, whether there has been a satisfactory accounting of the document is primarily a question for the trial court. ■ The rule is established in California that the sufficiency of the preliminary proof of the loss of a document before testimony as to its contents is received is addressed to the sound discretion of the trial judge (*Kenniff* v. *Caulfield,* 140 Cal. 34, 42 [73 P. 803]), and that the determination of the trial judge that substantial evidence has been introduced to show the loss or destruction of the original document will not be disturbed by an appellate court, in the absence of a showing that the proof of loss or destruction was manifestly insufficient (*Kenniff* v. *Caulfield, supra,* p. 42; *Brown* v. *Gow,* 128 Cal. 671 [18 P.2d 377]). (*White* v. *White,* 39 Cal.App.2d 57, 60 [102 P.2d 432].)

In the instant case Whiston testified that he remembered the agreement but was unable to find it in his files. Goldman testified that he had given it to a Mr. Girard and did not have it. Moreover, Whiston testified, without objection, that he signed an agreement with Goldman assigning his interest in the royalty to him. ■ Where no objection is made to the admission of secondary evidence for the purpose of proving the terms of an agreement, there is no error in the trial court's consideration of such evidence. (*Sublett* v. *Henry's etc. Lunch,* 21 Cal.2d 273, 276 [131 P.2d 369].) There is no dispute between Whiston and Goldman as to the

execution of the assignment or as to its terms. They were the only parties to it and there is substantial evidence as to its execution. On October 31, 1946, Whiston executed a formal transfer to Goldman of this interest. Even if the agreement between Whiston and Goldman concerning the sale of this interest was not in writing it was not void but voidable. ▮ An oral agreement may be taken out of the operation of the statute of frauds by a written memorandum executed subsequently, even though the agreement has already been performed by one party. (*Ayoob* v. *Ayoob,* 74 Cal.App.2d 236, 242 [168 P.2d 462].)

Plaintiff argues that the trial court's findings are deficient for failure to make findings on essential and material issues. We find no merit in this argument. Counsel for plaintiff stated to the trial court that "the sole controversy is the issue of the creation of the one-third per cent." His principal contention here is that the subject royalty became an asset of the partnership under the terms of the partnership contract made by appellant with respondent Goldman in his individual capacity. The court specifically found that the disputed royalty interest was not created as the result of the oral agreement between the plaintiff and defendant. It was found that the agreement of the parties related to royalty interests other than the one in dispute. Further findings were made that the allegations in certain paragraphs of the complaint were untrue. The findings are sufficient to support the judgment and we cannot here hold as a matter of law that the evidence and reasonable inference to be drawn therefrom are legally insufficient to support the findings.

Judgment affirmed.

Barnard, P. J., and Griffin, J., concurred.